## A. P. PRAUGHT v. EDWARD BUKOSKY and Others.[1]

December 8, 1911.

Nos. 17,371—(120).

**Repudiation of contract — evidence.**
　　　The evidence sustains the finding of the trial court that a contract between

[1] Reported in 133 N. W. 564.

[Note] As to liability for injury to higher property by hastening drainage from lower land, see note in 6 L.R.A.(N.S.) 146.

Right to hasten flow of surface water into watercourse, see note in 19 L.R.A. (N.S.) 167.

Failure to protect property against surface water wrongfully or negligently collected or diverted by another as contributory negligence, see note in 33 L.R.A. (N.S.) 369.

the plaintiff and other landowners relative to the drainage of their lands had been abandoned by all the parties at the time of the commencement of this action.

**Ditch for surface water — case followed.**

Under the doctrine of Sheehan v. Flynn, 59 Minn. 436, defendants were entitled to maintain ditches upon their lands for the purpose of accelerating the flow of surface waters, and under the evidence they are not responsible for the damages resulting to plaintiff caused by the overflow of a meadow, which was the natural receptacle for such waters.

Action in the district court for Wright county against Edward Bukosky and five others to recover $812. The two causes of action are stated in the opinion. The amended complaint further alleged that in a state of nature no drainage of defendants' land could be had over plaintiff's premises so as to benefit defendants' lands. The answer alleged that the spouses of the respective parties to the contract mentioned in the opinion did not join in its execution; that long prior to the making of the instrument set out in the complaint, the town board of supervisors of the town of Frankfort duly laid out a public ditch over the lands owned by defendants Zachman, Dalheimer, Marks and Bukosky, for the purpose of draining the same and other lands; that this ditch was the only one that carried water upon plaintiff's land; that the low marsh on plaintiff's land was much lower than the lands of defendants; that the natural slope of defendants' lands was toward plaintiff's marsh; that from time to time they had cleaned out the town ditch and dug branches leading into it, for the purpose of draining off surface waters; that no other than surface waters had been drained off by any of the ditches; that their lands were improved farm lands and that in cleaning the town ditch and in digging branches leading thereto, they did only what was necessary for the improvement of their land; that in following the natural watercourse the waters flowed upon plaintiff's lands, but that there was no other way in which defendants could drain their own lands; that in digging said ditches defendants did only what was necessary for the improvement of their lands and draining the surface waters therefrom, and in so doing they did not inflict unnecessary damage on plaintiff's land; that they had kept

their ditches in repair for the last three seasons; that they had offered to send men to assist in cleaning out plaintiff's outlet, but that he had refused to allow them to work thereon. The reply denied that there was no other way to drain defendants' lands than the one mentioned in the answer.

The case was tried before Giddings, J., who made findings and as conclusion of law found that the contract was void, and plaintiff was entitled to recover nothing thereon, but that by reason of the acts of defendants during the summer seasons of 1907, 1908 and 1909, plaintiff was entitled to recover $300.

Plaintiff's motion to amend the findings and conclusions of law or for a new trial was denied. From the order denying his motion, plaintiff appealed. Affirmed.

From the order denying defendants' motion to set aside the judgment and for amended and additional findings and conclusions of law or for a new trial, they appealed. Reversed and new trial granted as to second cause of action.

*W. H. Cutting* and *Henry Spindler,* for appellants.
*Frank T. White,* for respondent.

LEWIS, J.

On August 24, 1903, plaintiff was the owner of the southeast quarter and southeast quarter of the southwest quarter of section 31. Albert Becker was the owner of the north half of section 6, with the exception of the northeast quarter of the northeast quarter and the northwest quarter of the northwest quarter, lying immediately south of said section 31. Christina Bodems was the owner of the northwest quarter of the northwest quarter of said section 6, and Edward Bukosky was the owner of the north half of the northeast quarter of section 1. Frank Marks was the owner of the south half of the northeast quarter of section 1.

At that time there was a basin, known as "Mud Lake," which occupied about ninety acres of plaintiff's land and fifteen or twenty acres of Becker's land. A portion of the other lands above described was also of a marshy character, and the surface waters thereon naturally drained into the basin, the deepest part of which was

upon plaintiff's land. In wet seasons the water overflowed at the southeast corner of the basin and reached a watercourse running in a northeasterly direction. In 1888 plaintiff constructed a ditch from the northeast corner of this basin in an easterly direction into a water channel to the northeast, and from time to time deepened and extended it in a southerly direction through the center of the basin to the public road at the south line of his land. From time to time prior to 1903, the other owners above described constructed ditches through their respective lands, all connecting with plaintiff's ditch.

. Such being the situation, all these owners entered into a contract in writing on August 24, 1903, by which all the parties, including plaintiff, mutually agreed to construct and maintain a ditch commencing at the northeast corner of the marsh, running thence east about seventy rods, and each party agreed to maintain the ditches upon his own land of a sufficient depth and width to carry off all surface water.

In 1905 Becker sold the land he owned in the northeast quarter of section 6 to defendant Zachman, and sold to defendant Dalheimer the land he owned in the northwest quarter of section 6. In 1906 Christina Bodems sold the northwest quarter of the northwest quarter of section 6 to Edward Bukosky, and in October, 1908, sold the southwest quarter of the southwest quarter of section 31 to defendant A. W. Praught.

For several years prior to 1907, as the result of the construction and maintenance of these ditches, the basin was drained and plaintiff caused it to be converted into a hay meadow. But 1907, 1908, and 1909 were wet years, and the ditch running east from the northeast corner of the basin had been permitted to fill up to such an extent that the water stood on plaintiff's hay meadow, and this action was brought to recover damages caused thereby.

The first cause of action is based upon the contract, and it is claimed that defendants Edward Bukosky and Frank Marks, who were originally owners of land affected, are liable for violating the terms of the contract in failing to keep the seventy rods of ditch

116 M.—14.

open, and that the other four defendants are also liable, having purchased with notice of the obligations of the contract.

The second cause of action charges that all of the defendants collected water in the ditches upon their lands, and constructed additional ditches, and during the seasons of 1907, 1908, and 1909 diverted the surface water from the natural course and caused it to be discharged upon plaintiff's land to an unreasonable extent and beyond the capacity of plaintiff's ditch to carry it away.

The trial court found that all of the parties to the contract had abandoned it prior to the fall of 1906, and also held the contract void for the reason that the spouses of the signers had not joined in its execution. The court found, however, that plaintiff was entitled to recover on the second cause of action, and found that during the seasons of 1907, 1908, and 1909 all of the defendants continued to collect the surface waters accumulating upon their lands in the ditches constructed by them or by their predecessors, and diverted said waters from the natural watercourse at the southeast corner of the basin, and caused them to flow upon the lands of the plaintiff, thereby causing unreasonable injury, and ordered judgment for the plaintiff against all of the defendants for the sum of $300.

The plaintiff's appeal calls in question the finding of the court with respect to the validity of the contract, and defendants present the question whether the evidence justifies the findings.

## PLAINTIFF'S APPEAL.

1. With respect to plaintiff's appeal, it may be conceded that the mutual agreement of the parties was a sufficient consideration, that the contract did not impose any easement or incumbrance upon the lands, but was merely the personal obligation of each signer, and that by its terms defendants Bukosky and Marks were obligated to assist in keeping open the seventy rods of ditch. However that may be, the evidence sustains the findings that by the fall of 1906 the contract had been abandoned by all the parties. The evidence is clear that plaintiff himself repudiated the contract and that it was considered a dead letter. Such being the case, defendants Marks

and Bukosky cannot be held responsible under the terms of the contract for their failure to assist in keeping open the outlet to the northeast. For this reason the case is affirmed upon plaintiff's appeal.

## DEFENDANTS' APPEAL.

2. As to the second cause of action, all of the defendants insist that the evidence does not show that they accumulated the waters upon their own lands and discharged them unreasonably upon plaintiff's, and that the evidence fails to show that they were guilty of negligence in failing to drain the waters from the basin into the old channel. According to the evidence, the surface waters accumulating southwest of defendant's lands flowed through a culvert under the railroad, thence in a northeasterly direction to the land belonging to Marks, and thence gradually and naturally in an easterly direction over the lands of Dalheimer, Bukosky, and Zachman to the basin.

It appears from the evidence that "Mud Lake" was the basin for a watershed in which the surface waters naturally collected, and all of the ditches which were dug by the defendants and the former owners only served to speed the flow of surface waters which had no other outlet. The land was marshy, and without a ditch retained the waters to a considerable extent, and, as maintained by all of the defendants, the ditches merely served to accelerate the flow of surface waters in the natural direction. The old channel, so called, from the southeast corner of the basin, did not carry off the waters, except at high-water periods, and until the new channel was made by plaintiff there was always considerable water in the basin at such periods. Instead of taking steps to drain the basin by deepening the old channel, plaintiff undertook to drain it by digging a ditch from the northeast corner and connecting it with a channel to the east. In the course of years he established a new outlet at a much lower level than the old, and the ditches on defendant's lands were constructed and maintained with reference to this changed condition.

Prior to the construction of the new outlet, the then owners were entitled to do what defendants are now charged with doing. They

could not have been prevented from causing the surface waters on their lands from filling the basin to its full capacity. Defendants were doing no more than that in 1907, 1908, and 1909, and the insufficiency of plaintiff's ditch to keep the water off from his meadow does not throw the responsibility on defendants. Under such circumstances defendants were not required to fill up their ditches or to back up the water and keep it from running in its natural course; nor were they required to go upon another's land and deepen the old channel, so as to take care of the surplus waters which flowed into the basin.

The evidence does not sustain plaintiff's claim that defendants have acted in an unreasonable manner in enlarging and maintaining their ditches. That their lands slope to the east and the surface waters drain into the basin is a natural advantage defendants are entitled to enjoy. That plaintiff's meadow happens to be the lowest point in which such waters are gathered is a natural disadvantage, which plaintiff has to contend with, and the evidence tends to show that he can overcome it by keeping his outlet open. The doctrine of Sheehan v. Flynn, 59 Minn. 436, 61 N. W. 462, 26 L.R.A. 632, does not justify plaintiff in exacting tribute from defendants, under the circumstances developed by the evidence.

New trial granted as to second cause of action.

Affirmed on plaintiff's appeal.