CHASE-HIBBARD MILLING COMPANY, Appellant, v. THE CITY OF ELMIRA, Respondent.

**Damages — municipal corporations — riparian rights — when city not liable for consequential damages to water rights, caused by public improvements made by city officers duly authorized and empowered to make such improvements.**

1. Consequential damages, which arise as the incidental and not the immediate consequences of an act, and are occasioned in the making of an authorized public improvement, there being no question of negligence, or of unskillfulness, are not recoverable.

2. The public officers of a city, situated on both sides of a river designated by law as a public highway, were duly empowered and authorized by its charter to build or repair public bridges and to clear out and repair the waterways under the charge of the city. For the purpose of repairing and permanently protecting one of the highway bridges of the city they excavated and restored an old

channel of the river, which had become filled up, in such wise as to deflect the current of the river from a pier of the bridge which was being undermined by the force of the current. In order to turn the river current into the restored channel a temporary obstruction was thrown across part of the river, which deflected much of the river waters into the channel, made by the tail race of a mill having ancient water rights in the river, thereby lessening the water power belonging to the mill. The work of making such public improvement was not done negligently or with any lack of reasonable care and skill. *Held*, that the city is not liable to the owners of the mill, and of the water rights belonging thereto, for the consequential damages caused by the work done in restoring the channel of the river in order to deflect its current from the bridge pier.

*Chase-Hibbard Milling Co.* v. *City of Elmira*, 143 App. Div. 971, affirmed.

(Argued February 5, 1913; decided March 4, 1913.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered March 17, 1911, affirming a judgment in favor of defendant entered upon a dismissal of the complaint by the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Henry Selden Bacon* for appellant. The acts found to have been committed by the defendant would have been unlawful if committed by an individual. (*Rothery* v. *N. Y. Rubber Co.*, 90 N. Y. 30; *Stye* v. *Mordant*, 1 Rolle's Abr. 104; 2 Rolle's Abr. 140; *Haight* v. *Price*, 21 N. Y. 241.) The declaration by statute that the Chemung river is a highway did not justify the acts found to have been committed. (*Smith* v. *City of Rochester*, 92 N. Y. 463.) The public duty of protecting the bridge did not justify the raising of the water on the plaintiff's wheels. (*Sauer* v. *City of New York*, 180 N. Y. 27; *Eaton* v. *B. G. & M. R. Co.*, 51 N. H. 504; *Bellinger* v. *N. Y. C. R. R. Co.*, 23 N. Y. 42; *Cott* v. *L. R. R. Co.*, 36 N. Y. 213; *St. Peter* v. *Denison*, 58 N. Y. 416; *Cogswell* v.

*N. Y., N. H. & H. R. R. Co.*, 103 N. Y. 10; *Ordway* v. *Vil. of Canisteo*, 66 Hun, 569; *Nevins* v. *Peoria*, 41 Ill. 502; *Stenson* v. *Mt. Vernon*, 104 App. Div. 17; *Smith* v. *B. & A. R. R. Co.*, 181 N. Y. 132.)

*Michael Danaher, Corporation Counsel,* for respondent. The Chemung river being a public highway and Main street bridge a public bridge, the defendant not only had the right, but it was its duty to protect the piers of that bridge. If plaintiff sustained injury by reason thereof, it is *damnum absque injuria.* (*Kerr* v. *Joslin,* 20 N. Y. Supp. 929; *Atwater* v. *Trustees of Canandaigua,* 124 N. Y. 602; *Prime* v. *City of Yonkers,* 192 N. Y. 105; *Gordon* v. *E. & K. R. R. Co.,* 195 N. Y. 137; *Driggs* v. *Phillips,* 103 N. Y. 77; *Radcliffe* v. *Mayor,* 4 N. Y. 195; *Ely* v. *City of Rochester,* 26 Barb. 133; *Northern Trans. Co.* v. *Chicago,* 99 U. S. 635; *Town of Montpelier* v. *Wheelock,* 70 Vt. 391; *W. M. M. Co.* v. *Shanahan,* 128 N. Y. 345.) No reversible error was committed by the exclusion of the mayor's letter. (*W. M. M. Co.* v. *Shanahan,* 128 N. Y. 345; *Young* v. *Valentine,* 177 N. Y. 347; *Forrest* v. *Forrest,* 25 N. Y. 501; *Collie* v. *Tifft,* 47 N. Y. 119, 121; *McGean* v. *M. Ry. Co.,* 117 N. Y. 219.)

Gray, J. This action was brought by the plaintiff to have the city of Elmira restrained from diverting the waters of the Chemung river into a tail race, or channel, by which the waters passing through the plaintiff's mill were carried away. The facts are stated in findings by the trial court and are conclusively established by the unanimous affirmance of a judgment, which dismissed the plaintiff's complaint upon the merits. No opinion was expressed at the Appellate Division.

In 1813, the Chemung river, then known as the Tioga river, was declared to be a public highway by an act of the legislature, which is still in force. In 1824, a dam was authorized by legislative enactment to be built across the

north branch of the river, in the village of Newton,
which thereafter became the present city of Elmira. One,
Baldwin, in whose behalf the legislature had acted, erected
a grist mill in 1827 and, since that time, a dam and a
mill have been maintained on the original sites. The
plaintiff, through mesne conveyances, in 1890, acquired
the title to the properties and has operated a grist mill;
using the water power, supplemented by a steam plant.
The mill site is at the western extremity of an island in
the river and within the limits of the city; which was
commonly known, in earlier times, as Davis island and,
in later times, as Clinton island and which divided the
river at that point into two channels, to the north and
south of the island. Its westerly end is owned by the
plaintiff, for a distance of 200 feet, and the easterly por-
tion is owned by the city. When the dam was originally
constructed, a wall, extending a short distance easterly
from the mill, guided the discharge of water from the
mill wheels into the river. Subsequently, the plaintiff's
predecessors in title extended this wall, through a con-
struction of piles and planking and parallel to the north
bank of the river, (all of which north bank is covered by
buildings fronting on Water street of the city and built
back to the river), for about 250 feet; or some 50 feet
beyond the boundary line of the mill property. Later,
the extension was continued further by an earth embank-
ment; which, at the time of the plaintiff's purchase of the
property, had reached to the bridge carrying Main street
over the river; a distance of about 700 feet from the mill.
After its purchase, the plaintiff extended the embank-
ment some 200 feet eastwardly from the bridge. This
embankment, substantial in width and in height through-
out the greater part of its length and, at the easterly end,
sloping to the level of the bed of the river, was added to,
from time to time, by depositing upon it gravel and
rubbish taken by the plaintiff and its predecessors from
the confined portion of the river, which constituted the

tail race of the mill. The northerly branch of the river, now in question, had been so affected by the action of the river waters and ice in creating gravel bars, in the part south of the tail race embankment, that it became filled up and its channel was shifted more and more to the south. Prior to 1902, or 1903, there was a main channel of the river, practically, running parallel to the embankment; which, from a point a little westwardly of the Main street bridge, flowed in a northeasterly direction under the bridge and into the tail race. This channel, in the course of time changing its course southwardly, bore upon the second pier of the bridge with such force as to cause a deep hole in the river bed at that point and to seriously threaten the foundations of the pier. This bridge, constructed in 1874, was a much traveled city highway and the defendant undertook to repair the damage and to protect against its recurrence. The finding is that, "for the purpose of turning the current from the head of the pier and enabling the defendant to more economically and expeditiously fill the hole," the defendant excavated the bed of the old main channel, which had filled up with gravel. This excavation was made, practically, at the same depth as the old bed and it ended eastwardly of the end of the tail race embankment. In order to turn the river current into this excavated channel, a temporary obstruction of posts and planks, which we might describe as a wing dam, was placed across that part of the river. The effect of thus diverting so much of the river waters and of discharging their volume into the channel made by the tail race was to lessen the current in the raceway and to increase the depth of water on the plaintiff's wheels some four inches; thereby lessening the water power.

The facts, which, necessarily, have been stated at this length, show that the public authorities of the city of Elmira were making a public improvement for the purpose of protecting a bridge, which constituted one of its important highways, and that the diverting of the river

waters into an old channel, as restored, carried them to a point beyond the tail race embankment. It does not appear that the work was performed negligently, or with any lack of reasonable care and of skill. We may assume, as the appellant argues, that if an individual had committed the same act in diverting the stream, there would have been an actionable injury; but this rule of the individual can have no application to an act of the defendant, performed in the accomplishment of a public purpose and within the powers granted by the legislature. By the charter of the city, (Laws of 1906, chap. 477), of which judicial notice may be taken, because, not only, declared to be a public act, (see sections 249 and 239), but because it is a public statute, (Dillon on Municipal Corporations, sec. 50), all the powers of highway commissioners were conferred on the common council and the board of public works was empowered and authorized to build, rebuild, or repair public bridges and to clean out and repair the water ways under the charge of the city. (Sections 77, 154.) Section 242 of the charter invested the common council with power to clear out and deepen the channel of the river and to cause to be removed all unlawful obstructions. These express powers, sufficiently, authorized the defendant to do whatever was necessary to be done in maintaining its public bridges and water ways in a proper condition. The municipality held and exercised them in its political, or governmental, capacity and, necessarily, the need and occasion for their exercise were committed to the discretion of the proper public authorities. As observed, the authority of the defendant over the public highways being conferred by legislative grant and, therefore, governmental in its nature, when the defendant, for the purpose of repairing and of permanently protecting one of its bridges, restored the old channel, in such wise as to deflect its current from the bridge pier, it could incur no liability for consequential damages to the plaintiff. In such case, the rule should be considered as

30

well settled that consequential damages, which arise as the incidental and not the immediate consequences of an act, and are occasioned in the making of an authorized public improvement, there being no question of negligence, or of unskillfulness, are not recoverable. (*Radcliff's Exrs.* v. *Mayor, etc., of Brooklyn*, 4 N. Y. 195; *Atwater* v. *Trustees of Canandaigua*, 124 ib. 602; *Springfield F. & M. Ins. Co.* v. *Village of Keeseville*, 148 ib. 46; *Transportation Co.* v. *Chicago*, 99 U. S. 635; Dillon's Municipal Corps., section 39.)

In *Atwater's Case*, (*supra*), which related to the building of a bridge, the dam used for the work of construction, while not encroaching upon the plaintiff's premises, obstructed the flow of water in the channel, to the prejudice of owners of property affected by it; but, it being a lawful public improvement, the defendants were held not to be liable for the consequences. In this case, the defendant's officers were conducting a public work designed for the public good and safety. Though not taking, nor, directly, invading the plaintiff's premises, when the consequences of the defendant's act were to cause injury to the plaintiff, the case came within the rule as one of *damnum absque injuria*. In the able argument of appellant's counsel, it is insisted that the public duty of protecting the bridge did not justify the raising of the water on the plaintiff's wheels and that the excavation of the new channel was not for the purpose of protection. The difficulty with this argument is twofold. In the first place, it was discretionary with the municipal authorities what should be done with the channels of the river, whether for purposes of bridge protection, or for any other relevant municipal purpose, and, in the next place, the finding of fact was that the bridge pier was seriously threatened by the river current. Furthermore, it appears that, in the restoraton of the old north channel, the excavation did not cut the embankment of the tail race; but ended to the east of it.

It is, also, argued for the appellant that there was error committed upon the trial in the exclusion of a letter from the mayor of the defendant, which was written, after the action was commenced, to the plaintiff. Its purport was relevant to the controversy; but it was immaterial to the determination of the issues. Although evidencing that the mayor considered that what had been done had been with a purpose other than the mere protection of the bridge, it could not affect the determination of the question. If the public authorities were authorized to do what they did do with the river channels, the reasons that moved them do not concern the plaintiff. (*Waterloo W. Manfg. Co. v. Shanahan,* 128 N. Y. 345, 362.) The assignment of an improper motive, or reason, for doing an act, which the municipality was authorized to perform could not make that act illegal.

For these reasons, I advise the affirmance of the judgment appealed from.

CULLEN, Ch. J., WILLARD BARTLETT, HISCOCK, CUDDEBACK, HOGAN and MILLER, JJ., concur.

Judgment affirmed, with costs.