# CASES ARGUED AND DETERMINED

IN THE

# SUPREME COURT OF MISSISSIPPI

AT THE

## SEPTEMBER TERM, 1922.

---

## HERRING v. LEE COUNTY.

[93 South. 439, No. 22507.]

HIGHWAYS. *County may divert flood waters on property owner not contiguous to highway without liability.*

Where a county constructs a levee on a public highway which merely obstructs the flow of overflow flood waters and returns them to the channel of a stream earlier than they would if not diverted, which causes a greater overflow on a property owner not contiguous to the highway the county is not liable in damages for so doing. *Indian Creek Drainage District* v. *Garrott,* 123 Miss. 319, 85 So. 312, cited.

APPEAL from chancery court of Lee county.

HON. A. J. MCINTYRE, Chancellor.

Suit by G. O. Herring against Lee County. From a judgment for defendant, plaintiff appeals. Affirmed.

*George T. Mitchell* and *C. R. Bolton,* for appellant.

Appellee does not controvert the law as contended for in our original brief and supported by the Lackey case, Miller case and others, but undertakes to escape its application in this case by claiming that it does not apply to overflow water.

130 Miss.]          (1)

We do not concede that this is overflow water in the sense that the term is used in the Indian Creek Drainage District case, the Cubbins case and others cited by appellees. In those cases, the waters arose and overflowed independently of any rain at that particular point. It was an overflow from the melting snows and spring rains probably many miles away, flowing down the watercourse and spreading over the country as it gathered volume, and hence quite different from surface water overflows. Those overflows were not matters of a few hours, which subsided shortly after the rain. But here we have a small stream which couldn't get waist deep and stay in its banks. It was practically the head of it and all of the water that overflowed was the result of a heavy rain which was the only thing that could cause it to overflow. The topography of the country was such that the rains which fell on the surrounding surface collected quickly and covered from hill to hill this bottom one hundred rods wide. In the Indian Creek Drainage District case and *Janes* v. *Janes,* hereafter referred to the water denominated as overflow water came down the river and ran out of the banks when probably no rain had fallen on the surface adjoining at all. Here the water, overflow and all, is the direct result of heavy rain. Does it become overflow water because the rain water falling on the surface of the adjoining hills is collected in the valley followed by this little creek? When does it cease to be surface water and become overflow water? Does the surface water falling on a hill and collecting in a little drain, or washed place, become overflow water when that little drain becomes insufficient to carry off as fast as it collects, the water falling? If the law as to overflow water is to be extended to a small creek which rises only from heavy freshets and fed by the water falling on the surface of the adjoining hills, it might be carried on *ad infinitum* and surface waters become a mythical thing existing only as a mental concept. Might it not be said that the water running down a corn row which gathered volume as it went and spread over the row, that

it was overflow water and therefore come under the rule as contended for by appellee. We do not believe this court ever intended that the Indian Creek Drainage District Case should ever be carried on to such a ridiculous absurdity.

However, as we understand the law, it doesn't make any difference in this case whether this be surface or overflow water. Whatever difference there may be under the law as to the right to levee against overflow water and surface water, neither question is in this case. The complaint is at collecting water and discharging it in volume and force upon appellant's land. Appellee admits that they have no right to do this as to surface water. What further right have they as to overflow water that they may collect it and discharge it in volume upon another? There is not one line of authority to support such a proposition. Our understanding of the law is that one may not collect any kind of water and discharge it in undue volume and force upon another. Our position is not in conflict with either the Indian Creek Drainage District case or *Jones* v. *George*, 89 So. 231.

The undisputed facts are that in times of heavy rains one kind of water, whether overflow or surface, got over this entire bottom one hundred rods wide and sufficient depth to flow over the old partial levee about two feet high. The county built a levee for a road across the bottom, greatly reducing the openings for the water to pass through. The new levee is about five feet above the surface of the ground. The effect of it is to stop the flow of this one hundred rod expanse of water, impounding it against this five-foot levee and force the great volume of it under Bushbeloda creek bridge from twenty to twenty-seven feet wide. It is like Alexander's quart jug into which the merchant put a half gallon of mollases, it could stand it but it was an awful strain. The court can readily see the effect of forcing this five-foot wall of water through such a small opening. It goes through in such volume and with such force that the old run which is so inadequate above the levee that it lacks

one hundred rods of being wide enough, is otherwise unable to contain it below and this swirling current which is so strong as to undermine one end of the bridge refuses to stay in the banks and sends a current out over appellant's land. This current goes out over what was high ground and which never overflowed before and has washed the soil at least two feet, whereas this overflow before it was confined to such a small opening, used to pass smoothly over the entire bottom.

The court below seems to have fallen into the error of thinking that because this impounded water is discharged through the creek run that the owner below could not complain. That did not prevent his being damaged. To our minds, the impounding and discharge of water in volume is not made the more lawful simply because the old creek run is made the conduit through which it is discharged, and especially when it is discharged in volumes so much greater than the capacity of the conduit to carry, as in this case. It all comes back to a question of fundamental law and common sense that one may not thus collect water and discharge it with such volume and force that adjoining land is washed and injured, and this even though the outlet through the levee against which it is impounded be the creek run.

*Mitchell & Clayton,* for appellee.

We contend further than no damage was proven in this cause. As we have shown the only damage recoverable in this case under the pleadings would be the damage to crops. The proof fails to show this damage. Complainant was asked the following question: "How about the crops raised on that land now, compared with the crops raised prior to the construction of that levee?" A. I don't get half.

Then on page 30 of the record complainant is asked if his claim filed with the board was an estimate of his damage to the best of his judgment. To which he replied in the affirmative. That is the testimony as to damage to crops.

No attempt is made to show at what time of year the crops were injured or the condition of the crops at the time of the overflows. In the case of *M. & O. R. R. Company* v. *Hambric,* — Miss. —, this method of proving damage to crops is held insufficient. The same doctrine was announced by this court in *R. R. Company* v. *James,* 118 Miss. 225. The evidence also shows that this creek always overflowed, both before and after the levee was constructed and it would be necessary to show how much of the damage was attributable to the ordinary overflows and how much to the overflow water put upon the land by construction of the levee, *M. & O. R. R.* v. *Hambrick,* — Miss. —.

Complainant cites the case *Railroad Company* v. *Lackey,* 72 Miss. 881, but in that case, surface water only was dealt with and the Railroad Company impounded the surface water and discharged the same upon the plaintiff's land. In that case the plaintiff owned the land adjoining the railroad right of way. In the case at bar the complainant did not own the land adjoining the right of way of the public road, and the county did not discharge any water upon the land of the complainant.

The other cases cited by complainant, *R. R. Company* v. *Miller,* 68 Miss. 760; *Harvey* v. *I. C. R. R. Co.,* 77 So. 273; *Ferris* v. *Wellborn,* 64 Miss. 21; *Sinai case* in 71 Mississippi, all deal with the same subject of impounding surface water and discharging it upon the adjoining land. The appellee takes no issue with appellant as to this principle of law, but we earnestly contend that it has no application to the facts in this case. In this case, the county interfered with no stream bayou or other watercourse. It simply raised its road bed for protection of its road from overflow water. This character of water has been held by our court in many cases to be an out-law against which every person has a right to protect himself.

In the case of *Indian Creek Drainage District* v. *Garrett,* 123 Miss. 319, will be found the latest announcement of this court as to overflow water. In that case will be found a discussion of Cannon and Carrier cases, cited by com-

plainant and the difference shown. *Jones et al.* v. *George,* 126 Miss. 576, 89 So. 231.

In the Cannon and Carrier cases natural watercourses had been interfered with. The principle announced in the Indian Creek Drainage District case that vagrant flood waters, are the common enemy of the public, has also been sustained by the holding of the United States supreme court, in the following recent cases: *Jackson case,* 57 Law, Edition, 1363; *Hughes case,* 57 Law Edition, 1374; *Cubbins case,* 60 Law Edition, 1041.

There is no controversy in this case about the character of water which is claimed to have been interfered with. All the proof shows that it was vagrant flood water and was not the water of any stream or bayou. The county had the same right as any individual would have had to protect its property from this common enemy. The proof shows that it was impossible to maintain a road without raising the road bed. The county was only protecting the road from this overflow water. It did not discharge the water upon complainant's land, because complainant owned no land adjoining the right of way. The only contention is that it forced this overflow water back into the banks of the creek and after it reached the creek, that is crossed over to the other side and eventually spread out over the land of complainant. We submit that the Chancellor was correct in his interpretation of the law which controls this case. We also submit that he found the facts against the complainant, and that unless his finding was manifestly wrong this court will not disturb the same.

ETHRIDGE, J., delivered the opinion of the court.

The appellant was owner of certain lands along the northern boundary of which a public road known as the Tupelo and Poplar Springs Road passed. Crossing the road at the northwest corner of the appellant's land and running south practically on the western boundary of the said land is a stream known as Bushbeloda creek. West

of the creek along the said road is a strip of bottom land, the distance being from the creek to the hills west of appellant's land about one hundred rods. Near the western part of this bottom is a small stream called Union Branch. Both of the said streams overflow frequently, and in time of heavy rains prior to the construction of the levee hereinafter mentioned these flood waters spread over the entire bottom. In 1915 the board of supervisors of the county had a dump thrown up across this bottom from the bridge over Bushbeloda creek to the hills west. It left openings at Union Branch and at Bushbeloda creek and also an opening about two hundred and seventy-five yards west of the bridge on Bushbeloda creek. Prior to the erection of this dump for elevating the roadway, the waters passed over this road in times of flood; there being five or six places in the old roadbed where it crossed. On the north or upper side of the levee so constructed in 1915 there was constructed a borrow pit or excavation, about twenty feet wide, which ran along the northern side of the public road into Bushbeloda creek. As the result of the construction of the road and levee, the water which hitherto overflowed the whole bottom in a smooth even way is collected above the dump or levee and empties into Bushbeloda creek, except that part which passes through the two other openings mentioned, the result of which is to empty into Bushbeloda creek the collected flood waters which makes the waters in that stream higher where it passes along the appellant's land than it was heretofore, and in time of flood the channel is insufficient to convey the accumulated waters. On the southern part of the appellant's land the lands on the east side of the creek are lower than that on the west side, and the result is that the flood waters pass across his land in a greater amount and to a greater depth than formerly. And the testimony tends to establish that the land is less productive, producing less crops than theretofore. There was some conflict in the evidence as to the damage done to the appellant's land, but the chancellor found that he was not entitled to any damages, and we reach the conclusion

from the record and his opinion that he did so because the law did not entitle the appellant to damage in such case.

The appellee contends that the cases of *Indian Creek Drainage District* v. *Garrott,* 123 Miss. 319, 85 So. 312, and *Jones* v. *George,* 126 Miss. 576, 89 So. 231, control this case, and that under them appellant is not entitled to damages claimed, nor to any damage.

The appellant did not own the land on either side of the public road west of Bushbeloda creek, but his claim for damages is that the construction of the levee and borrow pit caused the flood waters to be cast back into the channel of the creek earlier than they would have been cast and if the said levee had not been constructed such flood waters would have passed beyond his land before returning to the channel of the stream. The proof shows that only flood waters pass back into Bushbeloda creek above the public road and that the channel of the Union Branch is not affected and that no bed of the stream has been diverted by reason of the said levee. In the *Indian Creek Drainage District Case, supra,* this court held that any person could fight vagrant flood waters; that is to say, such flood waters as spread out uniformly over the adjacent lands not being collected in any channel or stream. We are of the opinion that the above cited cases control this case, and that the appellant has no right of recovery in this case.

*Affirmed.*