**JEFFERSON COUNTY DRAINAGE DIST. NO. 6 v. McFADDIN. (No. 1458.)***

(Court of Civil Appeals of Texas. Beaumont. Jan. 21, 1927. Rehearing Denied Feb. 2, 1927.)

1. **Evidence ⬅10(1)—It is common knowledge that all Gulf Coast region along southern coast of Texas is flat, low, and marshy, and is frequently inundated with water.**

It is matter of common knowledge that all Gulf Coast region along entire south coast of Texas is flat, low, and marshy, and that great portions of same are frequently inundated by salt water from Gulf, as well as surface water from inland, and that banks of bayou and streams passing through same are low and flat.

2. **Drains ⬅40—Evidence held not to support allegations that plaintiff's land outside drainage district would be damaged by construction of new ditches proposed.**

In suit to restrain drainage district from improving drainage system and for damages, evidence *held* not to support allegations that damages would occur to plaintiff's land, located outside drainage district, because of construction of new ditches proposed.

3. **Drains ⬅47—Money voted to construct drainage system within bounds of drainage district could not be used outside of drainage district.**

Where money was voted specifically under law for purpose of constructing drainage system within bounds of drainage district, it could not be used to build levees outside district to prevent future overflow and damage to plaintiff's land far removed from drainage district.

4. **Drains ⬅40—Construction of improvements by drainage district could not be enjoined, where land within district was valuable for many purposes only when drained, and district was large and contained large population.**

Where territory within drainage district was large and contained large population, and where much of land within district was flat, wet, and not fit for domestic purposes, and was menace to public health, but if drained was valuable for many purposes, one owning land not adjoining drainage district could not enjoin construction of improvements by drainage district because of possible damage to him.

5. **Waters and water courses ⬅118—Landowner may, in reasonable and necessary improvement of land, repel surface water in reasonable manner.**

At common law, surface water is regarded as common enemy, and landowner has right, in reasonable and necessary improvement of his land, to repel surface water therefrom, and, if he does so in reasonable and careful way, he is not liable therefor, regardless of lay of land.

6. **Drains ⬅18—Legally organized drainage district may do whatever individual landowner may do in protection and improvement of his land.**

Whatever may be done by an individual landowner in protection and improvement of

---

his land may be done by legally organized drainage district.

**7. Evidence** ⊂⊃10(5)—**Court takes judicial knowledge that Taylor's bayou is large stream, an arm of Gulf of Mexico, in which tide for considerable distance ebbs and flows regularly.**

Court takes judicial knowledge that Taylor's bayou is commonly known to be large and capacious stream, an arm of Gulf of Mexico, in which tide for considerable distance ebbs and flows regularly.

**8. Drains** ⊂⊃57—**That volume of water flowing into bayou was increased by reason of drainage did not give landowner cause of action against drainage district.**

That, by reason of drainage, volume of water flowing into bayou was increased by hastening of flow, did not give landowner, on whose land water overflowed from bayou, cause of action against drainage district.

**9. Waters and water courses** ⊂⊃119(3)—**Surface water may be collected by drains and carried into channels and streams made by nature, though flow is hastened.**

Surface water may be collected by drains and ditches, so long as it is not diverted from natural flow, and carried into channels and streams made by nature for its passage, even though its accumulation and flow may be thereby hastened and lower landowners' lands subjected to increased overflow.

**10. Drains** ⊂⊃60—**Drainage district was not liable to citizen for consequences of authorized act, where no negligence shown (Rev. St. 1925, arts. 8097–8193).**

Jefferson county drainage district No. 6, being authorized by Rev. St. 1925, arts. 8097–8193, and vested with power and duty to carry out purposes of its creation, was not liable to citizen for consequences of construction of drainage district, in absence of showing of negligence in manner of doing.

**11. Waters and water courses** ⊂⊃119(2)—**Landowner cannot concentrate at one point surface water and discharge it in body on neighbor's land.**

Owner of land cannot concentrate at one point surface water diffused over surface of his own land and discharge it in body on land of his neighbor.

On Motion for Rehearing.

**12. Drains** ⊂⊃40—**Evidence held not to show that plaintiff's land outside drainage district was not overflowed before construction of ditches.**

It suit to restrain construction of improvements by drainage district and for damages, evidence *held* not to show that plaintiff's land outside drainage district was not overflowed before drainage ditches were constructed.

Appeal from District Court, Jefferson County; J. D. Campbell, Judge.

Suit for an injunction and for damages by W. P. H. McFaddin against Jefferson County Drainage District No. 6. From an order granting an injunction, defendant appeals. Reversed, and injunction dissolved.

O. J. Todd, C. S. Pipkin and A. D. Moore, all of Beaumont, for appellant.

Howth, Adams & Hart, of Beaumont, for appellee.

O'QUINN, J. This is an appeal from the granting of an injunction. Appellant, Jefferson county drainage district No. 6, is admittedly a legally organized drainage district, under and by virtue of chapter 7, tit. 128, of the Revised Civil Statutes of Texas. Said district voted bonds and inaugurated an extensive system of drainage improvements, which, after completing the work first planned, left $78,000 of the bond money unexpended. It then determined to effect a more perfect drainage by laying out and planning more ditches to aid those already constructed, and to pay for same with the $78,000, and, in accordance with law, held an election for that purpose, which carried in favor of the additional drainage proposed, and when the work was about to be begun in the construction of the new improvements, this suit was filed by appellee for $50,000 damages and for an injunction restraining appellant from carrying out its proposed additional drainage work.

The material allegations of appellee's petition are:

"(1) During all the times hereinafter mentioned the defendant, Jefferson county drainage district No. 6, was and still is one of the drainage districts of said county, duly and legally established and constituted under, by virtue of, and in pursuance of chapter 7, arts. 8097 to 8193, of the Revised Civil Statutes of Texas 1925, and that the said Dan Tillery, Elmer Boyt, and Baxter Willis were and still are the duly and legally elected and appointed commissioners of said district, as provided in said statutes, by and through whom the said district is herein sued in pursuance of the provisions of said article 8174.

"(2) After the establishment and institution of said drainage district as aforesaid the said defendant, acting by and through its said commissioners as its duly authorized agents, planned, formulated, and constructed what purported to be a drainage system for said district, whereby a large part of the north and eastern portions of said county were and are being drained by a system of large and deep ditches, and as a result of said system of drainage the waters and natural rainfall of the said portions of said county are diverted, drained, and caused to flow into that certain natural stream of water known as Taylor's bayou, which flows in a general easterly and southeast direction and empties into the Sabine-Port Arthur Navigation Canal.

"(3) The said defendant and its authorized commissioners were guilty of carelessness and negligence in the planning and construction of the said drainage system, in that they knew, or

⊂⊃For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

by the use of ordinary care they could and would have known, that the amount of water that would usually and customarily be thus diverted and drained from said portions of the county into Taylor's bayou would from time to time consist of such large volumes that the said Taylor's bayou would be wholly insufficient to contain and hold the said waters within its banks, and that the waters that would debouch from said bayou into the canal would from time to time be of such immense quantities and volume as to overflow and overrun the banks of said navigation canal and that a great amount of land lying to the south of said Taylor's bayou and west of the said bayou and canal from where it enters the canal to the town of Sabine and below would thus be, and they were and are, from time to time overflowed and the waters caused to stand thereon at an average of from four to five feet in depth for an indefinite length of time.

"(4) Plaintiff is the owner in fee simple of the said land lying to the south of the said bayou and west of the canal down to and below the town of Sabine and to the Gulf of Mexico, consisting of approximately 50,000 acres of land adjacent to said bayou and canal in the directions therefrom aforesaid; and some time in the fall of 1925 the rainwaters and drainage from the said drainage district No. 6 were caused by said drainage system to flow into Taylor's bayou in such large quantities as to overrun and overflow the south banks of said bayou and to overflow the west bank of the said Port Arthur-Sabine Canal, whereby great volumes of said waters were caused to overflow and to stand at a depth of four or five feet upon practically all of plaintiff's said 50,000 acres of land of the general description above shown, and so remained for and during a period of three to four months. But for said drainage system said overflow would not have occurred from the natural drainage unaffected by said drainage system.

"(5) The said overflow of plaintiff's land, and the damages therefrom as hereinafter shown, were caused directly and proximately by and through the negligence of the defendant and its authorized commissioners as follows:

"(a) They carelessly planned and constructed the said drainage system, ditches, and laterals, so that the natural and rain waters of a large section of the county of Jefferson were diverted from their natural courses and drained and conveyed into Taylor's bayou, as aforesaid, which said stream was of insufficient capacity and without banks of sufficient height safely to contain and convey both its own and the said drainage system waters at times when there are heavy rains, whereby the said waters were caused to greatly overflow the south bank of said bayou and the west bank of the said canal, into which said bayou empties.

"(b) They further carelessly and negligently failed and omitted to construct dikes or levees of such size, strength, and height along the south and west bank of said bayou and the west bank of said canal that same would be sufficient to contain and keep the said waters in the bayou and canal, and thus prevent flooding of adjacent lands, as aforesaid.

"(6) As a direct and proximate result of the negligence aforesaid plaintiff has sustained actual damages, in that, during or about the month of December, 1925, the said 50,000 acres of land belonging to plaintiff were thus overflowed with four or five feet of water, which stood thereon for several months, and thus unfitted the said land for the uses and purposes for which it was fit and to which plaintiff had devoted it, to wit, muskrat trapping and cattle raising, the said overflow drowned and drove out the rats and prevented a growth of grass during the fall and winter and spring, whereby it became and was impossible for plaintiff to pursue either the business of catching and trapping muskrats or pasturing his cattle on said land; all to his actual damage in the sum of $50,000 for which he sues. All of said overflow was caused by the additional waters over and above the natural drainage of and from said drainage district.

"(7) Plaintiff further respectfully shows to the court that in and over the territory aforesaid, covered by said drainage system, there are frequent, prolonged, and heavy rainfalls, and in such quantities as to render it inadvisable and impracticable to divert all of said waters into one small stream with very low banks as the said Taylor's bayou is, and, consequently, there will undoubtedly in the future be many other and frequent such overflows and inundations of plaintiff's land, with the same, similar, or worse results, unless the defendant and its commissioners will take the proper steps to build the necessary levees along the bayou and canal, as aforesaid, for the prevention thereof; and the plaintiff will, under the present conditions and circumstances, and so long as the south bank of the bayou and the west bank of the canal are permitted to remain as they are, and provided the said drainage system is not changed, be yearly and frequently subjected to the same overflows and the same damages, unless the defendants will remedy the said condition and thereby prevent the damage in the manner aforesaid. Plaintiff further shows unto the court that the defendant and its authorized commissioners, though often requested, have refused and continue to refuse to build or construct the said dikes and levees along the bayou and the canal, as aforesaid, though the defendant owns and has in its possession the sum of $78,000 cash, with a part of which they could build and construct the necessary levees to prevent the future damages that are, in the natural course of events, and under the climatic conditions here customarily prevailing, certain to be suffered by plaintiff in the manner aforesaid. Wherefore plaintiff is entitled to a mandatory writ of injunction commanding and enjoining the said commissioners to construct the necessary levees as aforesaid to prevent such future damage.

"(8) Plaintiff further makes known to the court that the said commissioners, in their official capacity as such commissioners of said drainage district, duly considered, determined and passed an order or are about to do so by authority of a popular election of the people of the district so as to spend the money to expend the balance of said sum of money in their possession, in their official capacity, as aforesaid, to wit, the sum of $78,000 cash in deepening, broadening, enlarging, and otherwise improving the drainage ditches and canals constituting the said system of the said district No. 6 of Jefferson county, Tex., and have duly elected and determined to spend the said cash on hand for

such purpose immediately; and, though the said commissioners have been often requested to do so, they have at all times refused and still refuse to take any steps or to make any expenditures or to use any of said money to prevent the damages directly resulting from the said drainage system as it now is and has been since its original construction and refuse to build any levees or dikes along and below said Taylor's bayou or in such other places as would hold the drainage waters from said drainage district No. 6 within the said Taylor's bayou, and thus divert and prevent such waters from overflowing the south banks of said bayou and over and upon plaintiff's lands as aforesaid, and have refused and still refuse to pay plaintiff any amount for damages already directly resulting to him as aforesaid, though plaintiff has promised to use and would use any such moneys thus paid him in building the proper and necessary dikes, ditches, or in the building and erection of other remedial and preventive works and constructions such as would be calculated wholly to prevent or greatly reduce the future damages to plaintiff that will be certain to occur if no such immediate steps and measures are taken, as aforesaid. If the said ditches and canals of the said system be enlarged, deepened, and improved as already contemplated and determined upon by the said commissioners, the direct and proximate result thereof will certainly be that a vast amount of water in addition to the great volumes already mentioned will be caused thus to flow into Taylor's bayou and a greater and deeper amount of water will thus be diverted over and upon plaintiff's lands, thus resulting in greater damages from time to time than those above alleged. The said commissioners, as aforesaid, have determined upon the policy of immediately expending the said moneys on hand for the purpose aforesaid of enlarging and increasing the capacity of the said drainage system and will immediately begin such expenditures and will shortly exhaust the said funds on hand, and there being no other source of income or way of collecting any further amounts as taxes or for the commissioners to obtain money in any other legal manner, plaintiff will thus be deprived of all possibility of obtaining legal relief if the said commissioners are permitted to carry out and complete said plans of expenditure. Wherefore plaintiff, being without any adequate or complete remedy at law, is entitled to an injunction against the said commissioners in their official capacity and against every and all of them, commanding and enjoining them to desist from any acts in carrying out the proposed plan of enlarging, deepening, or improving the said drainage system until the proper and necessary steps and measures are taken to prevent the threatened future damages to plaintiff, as aforesaid, and prohibiting them from expending any of the said moneys on hand for such purposes until such time as the necessary steps have been taken to prevent future damages to plaintiff, as heretofore alleged.

"Wherefore plaintiff prays as follows:

"(a) That the defendant, Jefferson county drainage district No. 6, be duly cited by serving citations on the said duly authorized commissioners, to wit, Dan Tillery, Elmer Boyt, and Baxter Willis.

"(b) That this honorable court issue its writ of injunction commanding and enjoining the said commissioners from expending any of the moneys they have on hand in their official capacity in enlarging, deepening, or improving the said drainage system until all such proper steps and measures have been taken as may be necessary to prevent future damage to plaintiff, as above alleged, and that the said commissioners be commanded to build and construct such dikes and levees or to take other preventive measures such as may be proper and necessary under the circumstances, along the south and west banks of Taylor's bayou and the west bank of the Sabine-Port Arthur Canal in such manner or in such other places as may be reasonably necessary to obviate the said future overflows and damage therefrom.

"(c) Upon final hearing that he have judgment against the defendant and against said commissioners in their official capacity in the sum of $50,000 actual damages already sustained, and for all costs of court in this behalf expended.

"(d) Plaintiff further prays for such other relief, both general and special, to which he may be entitled in law or in equity."

Appellant, defendant below, answered by general demurrer, numerous special exceptions, which we do not deem necessary to set out or discuss in this opinion, a general denial, admitted that it was engaged in drainage for the reasonable and necessary improvement of the lands within its bounds, for the protection of the health and convenience of the public, and to prevent the accumulation of stagnant waters; that it had constructed an extensive system of water drainage, whereby the waters of said district were carried into their natural water courses or channels, and thence into the Gulf of Mexico, the natural outlet for said waters; that it had taken legal steps for and was preparing to enlarge its original system by expending the balance of its original bond money, in the sum of $78,000, which was necessary to properly and effectively drain its territory; denied that the proposed improvements would in any way materially injure appellee's land, and asserted that said proposed improvements would not carry any water into Taylor's bayou, other than would naturally flow into same; that all of the water within the bounds of said district had Taylor's bayou for its natural outlet; and pleaded several other defensive matters, which it is not necessary to state. This answer was duly verified.

The hearing was upon the sworn petition and answer, together with maps and plats showing the location of appellee's land and the bounds of the district, and ditches and drains already constructed, and the proposed additional ditches, with the testimony of several witnesses for both parties. The court granted the injunction, and this appeal is taken from the order granting same.

Although appellee's petition alleged that the

ditches and improvements inaugurated and put into effect by appellant were negligently constructed, and that the waters of said district were diverted and converged into Taylor's bayou, causing it to overflow and damage appellee's land, which adjoined and was near to said bayou, there was no evidence of negligent construction of said ditches, nor is it shown that any of the waters of said district were diverted from their natural flow, but, to the contrary, the undisputed evidence shows that none of the waters were diverted from the direction of their natural flow, but that they were all conducted into Taylor's bayou, which was and is the natural gutter for their final disposal into the Gulf of Mexico.

[1] Appellee's land extended from the Gulf of Mexico for considerable distance along the Gulf Coast, and back inland along Taylor's bayou in the direction of the drainage district, but did not reach same. There was considerable land between appellee's land and the district. It is a matter of common knowledge that all the Gulf Coast region along the entire south coast of Texas is flat, low, and marshy, having for many miles inland only a very slight elevation, and that great portions of same are frequently inundated by salt water from the Gulf, as well as surface water from the inland, and that the banks of the bayou and streams passing through same are low and flat. This is the general situation and condition throughout Jefferson county. Appellee's lands were of this nature —marsh lands—and fit almost exclusively for pasturage only.

We think the judgment must be reversed for several reasons:

[2] (1) It appears that appellee was not complaining of damages that might occur because of the construction of the new ditches proposed, but that he was complaining of what had already been done. He testified:

"I am not complaining about you digging a few more little ditches out here on Calder and a few more in the upper end of the county, in order to redrain the country that you have already drained, but what I am complaining about is you taking that money and spending it and not giving us a chance to protect ourselves. I am objecting to you putting that money somewheres else instead of putting it down there in order to take care of me, that is what I am complaining about; yes, sir. I know what these little ditches are going to be. I don't know how much damage it will do to me. I do know, however, what the old woman said, 'Every little bit helps.'

"The drainage system that is going to cause the trouble hereafter is already in existence. The real trouble has not already come, the real trouble is yet to come. The drainage system that has caused all the damages I am complaining about now is already in existence."

So it appears by appellee's own testimony that he was complaining about matters already in existence, but according to his pleading he complained not of the continued operation of the drainage system already in existence, but of the threatened injury of the proposed new improvements, and the judgment was directed against them, and not against the system already constructed and in use. The evidence did not support the allegations.

[3] (2) In appellee's prayer for relief, he prayed for an injunction commanding appellant not to spend any of the $78,000 of the bond money voted for the purpose of constructing a system of drainage in said district in enlarging or improving the drainage system in said district, until appellant had taken steps to prevent future damages to appellee's property, and that appellant be commanded to build such dikes and levees in such places as would be proper and necessary to prevent future overflow and damage to appellee's land. Under the law, this money could not be used for any such purpose. It was voted specifically under the law for the purpose only of constructing a drainage system within the bounds of the drainage district, and could be used only for this purpose. Appellee's land did not adjoin, but was far removed from, the drainage district, and appellant could not go without the bounds of its district and expend any of the money voted for the construction of its drainage system for some foreign and unlawful purpose, and hence appellee was not entitled to an injunction on this feature, as by him prayed.

[4-9] (3) We are of the opinion that the judgment must be reversed, because, under the undisputed facts, grounds for the injunction did not exist. The territory within the drainage district covered a large portion of Jefferson county, and contained a large population. Much of the land within the district is flat, wet, and not fit for domestic purposes, and at the same time a menace to the public health, but if drained is valuable for many purposes. At common law, surface water is regarded as a common enemy. A landowner has the right, in the reasonable and necessary improvement of his land, to repel surface water therefrom, and, if this is done in a reasonable and careful way, he is not liable therefor, regardless of the lay of the lands. Barnett v. Matagorda Rice & Irrigation Company, 98 Tex. 355, 83 S. W. 801, 107 Am. St. Rep. 636. Whatever may be done by an individual landowner in the protection and improvement of his land may be done by a legally organized drainage district. The citizens within the bounds of Jefferson county drainage district No. 6, in a lawful and careful way, availed themselves of the right given by chapter 7, tit. 128 (formerly chapter 4, tit. 47), of the Revised Civil Statutes of Texas, as well as the right existing at common law, to drain the lands within the bounds of the district, and it is undis-

(291 S.W.)

puted that in doing so no water was diverted from its natural course, but that same was, by means of drains and ditches, carried into the natural stream, Taylor's bayou (which flowed through the drainage district), which it would have, in the course of nature, reached, and which bayou, while not so shown by the record, we must take judicial knowledge, is commonly known to be a large and capacious stream, an arm of the Gulf of Mexico, in which the tide, for a considerable distance, ebbs and flows regularly. While considerable of the water, before the drainage was effected, was held by seepage and evaporation from reaching Taylor's bayou, and by reason of the drainage the volume of water flowing into same was increased by the hastening of the flow, yet, as a matter of law, that did not affect appellant's rights, nor give a cause of action to appellee. We think that by the great weight of authority the rule is well settled that surface water may be collected by drains and ditches, so long as it is not diverted from its natural flow, and carried into channels and streams made by nature for its passage, even though its accumulation and flow may be thereby hastened and the lands of lower landowners along the stream into which the water is discharged subjected to increased overflow, without giving a cause of action to nearby or adjoining landowners. In such cases the injury is damnum absque injuria. Lessenger v. City of Harlan, 184 Iowa, 172, 168 N. W. 803, 5 A. L. R. 1523; Manteufel v. Wetzel, 133 Wis. 619, 114 N. W. 91, 19 L. R. A. (N. S.) 167; Mizell v. McGowan, 129 N. C. 93, 39 S. E. 729, 85 Am. St. Rep. 705, note, 726–735; Wilson v. Dondurant, 142 Ill. 645, 32 N. E. 498; Drainage District No. 1 v. Lawrence, 231 Ill. 86, 83 N. E. 104; Ribordy v. Murray, 177 Ill. 134, 52 N. E. 325; Shaw v. Ward, 131 Wis. 646, 111 N. W. 671, 11 Ann. Cas. 1139; Arthur v. Glover, 82 Neb. 528, 118 N. W. 111; Waffle v. Railroad, 53 N. Y. 11, 13 Am. Rep. 467; Boll v. Ostroot, 25 S. D. 513, 127 N. W. 580; Peck v. Herrington, 109 Ill. 611, 50 Am. Rep. 627; Praught v. Bukosky, 116 Minn. 206, 133 N. W. 564; Trigg v. Timmerman, 90 Wash. 678, 156 P. 846, L. R. A. 1916F, 424; Mason v. Fulton County Commissioners, 80 Ohio St. 151, 88 N. E. 401, 24 L. R. A. (N. S.) 903, 131 Am. St. Rep. 689; Todd v. York County, 72 Neb. 207, 100 N. W. 299, 66 L. R. A. 561; Marable v. Barhan, 137 La. 254, 68 So. 440; Pohlman v. Railway, 131 Iowa, 89, 107 N. W. 1025, 6 L. R. A. (N. S.) 146; Aldritt v. Fleischauer, 74 Neb. 66, 103 N. W. 1084, 70 L. R. A. 301; City of Bowling Green v. Stevens, 205 Ky. 161, 265 S. W. 495; Herring v. Lee, 130 Miss. 1, 93 So. 436; Borough of Bridgewater v. Borough of Beaver, 269 Pa. 27, 112 A. 232.

The general policy of the law is that in the interest of good husbandry, of the public health, of the advancement of the general upbuilding of the country, and the rescuing of waste portions of the lands and their being made to serve useful and profitable purposes, such organizations as appellant should be authorized and encouraged, and to that end our state law (chapter 7, tit. 128) was enacted. That the result of the drainage system here in question has been of vast benefit to the territory within its bounds is not questioned, nor has it been shown that same was not skillfully and carefully made —no negligent construction, nor unreasonable or improper ditches, excavations, or embankments shown. To hold that in cases such as the instant case, where drainage is sanctioned by statute, in the needed reasonable and proper improvement of great bodies of lands; that because the flow of the surface water is hastened into the stream which nature has provided for its carrying away, and because of the natural lay of the land along the banks of said stream far below the bounds of the district an occasional increased overflow of such lands is caused; that the district shall be mulcted in damages and enjoined from doing the things authorized by the law, and in accordance with its public policy, would be to thwart and destroy the whole purpose and intent of the law, and stagnate and prevent all improvements and cultivation, making it impossible for lands to ever be changed from their state of nature, and doom them to remain useless and a menace to the public health, and an impediment to public progress, whatever may be the necessity for their redemption and their possible adaptability to various useful and profitable purposes.

[10] Furthermore, Jefferson county drainage district No. 6 is a municipal corporation, authorized by the law of the state (chapter 7, tit. 128), and vested with the power and the duty to carry out the purposes of its creation, and, where a municipal corporation of the state has statutory authority to do a particular thing, through its properly constituted officers, it cannot be held liable to a citizen for the consequences which follow the doing, in the absence of some showing of negligence in the manner of the doing. 19 R. C. L. p. 1083, § 369; 28 Cyc. p. 1065; 4 Dillon on Municipal Corporations (5th Ed.) § 1674, p. 2917; Lessenger v. City of Harlan, 184 Iowa, 172, 168 N. W. 803, 5 A. L. R. 1523; Chase-Hibbard Mill Company v. Elmira, 207 N. Y. 460, 101 N. E. 158, 47 L. R. A. (N. S.) 470; Salzman v. New Haven, 81 Conn. 389, 71 A. 500, 22 L. R. A. (N. S.) 333.

[11] Among other authorities, appellee cites us to the case of Matagorda County Drainage District No. 5 v. Borden et al. (Tex. Civ. App.) 181 S. W. 780, as supporting his contention. This case is not similar to the instant case, neither as to the questions involved, nor the facts. In that case, the lands of Borden et al. were situated partly within and partly without the district. After the

judgment granting a temporary injunction was affirmed (181 S. W. 780), the matter was heard in the trial court upon the merits, and the injunction made permanent. From this judgment an appeal was taken, and the judgment affirmed (195 S. W. 308). By reference to this last report, we get a larger insight to the real matters in controversy. It is there shown that Matagorda county drainage district No. 5 had sought to appropriate some 38 acres of land as a right of way across the appellee's land, without paying for same, and apparently taking the position that it was not liable to compensate the owners for the right of way for its ditches and canals across the lands. Hence the question of compensation for property taken for the public use was the controlling issue, and was correctly determined. In the trial court, when the second trial was had, the drainage district asked the trial court to take jurisdiction and hear and pronounce judgment of condemnation in the matter, which was declined, and from which the second appeal was taken. This was correctly affirmed. In the cited case the drainage district was preparing to collect the surface water upon and over the lands within the district by a system of drains and ditches and to concentrate them at one point and to discharge them *upon* the lands of Borden et al., not to conduct the water into a *natural stream* for its carrying away, as in the instant case. The facts of that case and of the instant case are entirely different, and so the questions of law not the same. As we have shown, a different rule of law applies to the instant case from that in the cited case. We emphasize that it must be kept in mind that this case does not belong to that class where the owner of land collects the surface water on same and concentrates it at some point and there discharges it *upon* the land of his neighbor. The rule in such case is different to that applying in the instant case. It is elemental that the owner of land cannot concentrate at one point the surface water diffused over the surface of his own land and discharge it in a body *upon* the land of his neighbor. But, if there is a natural water course touching or passing through his land through which the water naturally flows from the surrounding country in a state of nature, he may, in making reasonable and necessary improvements, drain his land into it, and of this act his neighbor cannot complain.

We have given this case repeated and careful consideration, and are thoroughly convinced that for each of the reasons above given the judgment should be reversed, and the injunction dissolved, and it is so ordered.

### On Motion for Rehearing.

[12] Appellee has filed a motion for rehearing, asserting that we have committed numerous errors. We have carefully considered the motion, and adhere to our opinion on original hearing. However, we think we should give attention to appellee's repeated statement in said motion that the undisputed evidence showed that appellee's land "did not overflow," and that "Taylor's bayou did not overflow" before the drainage ditches were constructed. This is not in accordance with the record.

Henry Langham, a witness for appellee, testified:

"Before these drainage ditches were put in I have seen that land overflowed. I have seen that land overflowed before that is overflowed now."

A. Berwich, a witness for appellee, testified:

"I have frequently seen the marshes covered with water before the drainage ditches were put in. Before the drainage ditch was ever put in that whole country down there would get under water some time, but the water wouldn't rush in there like it does since the ditches have been cut in there. When the water would get in the marshes before those ditches were dug, there wouldn't be anything out but the ridges and high land."

Oscar Gallier, a witness for appellee, testified:

"The water used to overflow that country down there before the ditches were put in, but the water did not get as deep as it does since the ditches have been put in. I have seen Taylor's bayou out of its banks many times before the drainage ditches were put in. When it gets out of its banks it floods the surrounding territory down there. Those marshes have been plumb full of water long before the drainage ditches were put in. I have seen the time when that whole country down there would be covered with water. I have seen those marshes covered with water before the drainage ditches were put in. I have seen the water all over the face of the earth down there. * * * I have seen salt water cover that country in the marshes until it would be from Big Hill bayou to Salt bayou. The whole country between Salt bayou and Big Hill bayou would be flooded with water. That was before the drainage was put in down there."

The record above quoted is from the testimony of appellee's own witnesses. We do not think it necessary to quote further.

Appellee, in his motion, says:

"The court erred in holding that the owner of upper lands may drain the surface water off of the upper land on to the lower land or servient estate by artificial means and in such vast quantities as to overflow the lower lands, and that the owner of the lower lands so destroyed has no claim for damages or right to injunction to prevent the wrong."

We made no such holding. To the contrary, in discussing the case of Matagorda County Drainage District No. 5 v. Borden et al. (Tex. Civ. App.), 181 S. W. 780, cited by appellee, we said:

"In the cited case the drainage district was preparing to collect the surface water upon and over the lands within the district by a system of drains and ditches and to concentrate them at one point and to discharge them *upon* the lands of Borden et al., not to conduct the water into a *natural stream* for its carrying away, as in the instant case. The facts of that case and of the instant case are entirely different, and so the questions of law not the same. As we have shown, a different rule of law applies to the instant case from that in the cited case. We emphasize that it must be kept in mind that this case does not belong to that class where the owner of land collects the surface water on same and concentrates it at some point and there discharges it *upon* the land of his neighbor. The rule in such case is different to that applying in the instant case. It is elemental that the owner of land cannot concentrate at one point the surface water diffused over the surface of his own land and discharge it in a body *upon* the land of his neighbor. But, if there is a natural water course touching or passing through his land through which the water naturally flows from the surrounding country in a state of nature, he may, in making reasonable and necessary improvements, drain his land into it, and of this act his neighbor cannot complain."

The motion is in all things overruled.