# 656    SUPREME COURT OF WISCONSIN,

Hoyt and another vs. The City of Hudson.

## Hoyt and another vs. The City of Hudson.

*Water-course, how distinguished from the flow of surface waters.—Rights of owners of conterminous lands as to obstructing the discharge of such waters ; and also of municipal corporations.*

1. A "water-course" is a stream *usually* flowing in a particular direction, in a definite channel, and discharging into some other stream or body of water; and the term does not include surface water conveyed from a higher to a lower level for limited periods during the melting of snow, or during or soon after the fall of rain, through hollows or ravines which at other times are dry.

2. Although the owner of land cannot divert from its natural course and throw upon the land of another, to his injury, surface water falling or accumulating *upon his own land* (*Pettigrew v. Evansville*, 25 Wis. 223), yet the owner of lower land (acting in good faith, to secure the proper enjoyment and use of his own land), may lawfully obstruct the flow of surface water thereon from the adjacent higher grounds of other proprietors, and in so doing may turn the water back upon such adjacent grounds, or off from his own land on to or over the lands of another.

3. *Quære*, whether there may be an exception to this rule in the case of a hilly region where large tracts of land are drained through a narrow gorge, and would be submerged or greatly injured by its obstruction, so that the rule, if applied, would operate adversely to the interests of agriculture.

4. Cities, towns, and villages, as owners of lands for highways and other public purposes, have the same rights as private owners to obstruct or repel the flow of surface water.

5. Where the passage of surface water through a ravine is obstructed by the officers or agents of a city in the construction of streets, the owner of adjacent land injured by such obstruction cannot recover damages therefor.

APPEAL from the Circuit Court for *St. Croix* County.

This was an action to recover damages claimed to have accrued from the grading and raising of a street in the city of Hudson, whereby the surface waters, running through a ravine across the premises of the plaintiff adjacent to the street, were obstructed in their flow and and set back upon the said premises. The complaint alleged that the flow of the said waters was a natural water-course, running across the plaintiff's real estate and across the said street, and that by reason of the embankment raised in grading the

said street. the waters of said water-course accumulated upon said real estate in such quantity as to form a large and stagnant pool in close proximity to plaintiff's house and barn, causing stench and malaria, and rendering a portion of said real estate utterly useless. The answer denied that there was any natural watercourse flowing over the premises of the plaintiff or across said street, and alleged that the said street was a public highway, and that the grading and raising of the same was necessary for its improvement, and in order to render said street safe and convenient for the public as such highway.

All the evidence tended to show that the alleged water-course was no more than a channel or ravine which served in time of heavy rain or spring freshets to carry off the surface waters from the plaintiff's lot, over and across the street; and that, except at such times, it was usually dry. A summary of the evidence on this point appears in the opinion.

Several questions were raised on the trial, and elaborately discussed by counsel on the appeal, which, not having been passed upon by this court, are not deemed material to be stated here.

Verdict for the plaintiff; new trial denied; and defendant appealed from the judgment.

*Henry C. Baker* and *John C. Spooner*, for appellant, assuming that the waters accustomed to flow through the ravine across the premises of the respondent were merely surface waters, argued that such a stream was not a natural water-course ; that there is no obligation. resting upon the private owner of real estate to allow or suffer the discharge over or upon his lands of surface waters accumulating or falling upon conterminous lands lying higher than his own; that every individual has a right so to improve his lands as to prevent the flow of surface water thereon from the land of his neighbor; that the same principles apply equally to villages and cities in respect to the improvement of their

streets, and interrupting the flow of surface waters across lands held by them for public uses. Angell on Water-Courses, 4 and 5 and note 1, and 138; *Shields v. Arndt*, 3 Green's Ch. 242; Washburn on Easements, etc. 209–210; *Earl v. De Hart*, 1 Beasl. 280; *Radcliff's Executors v. Mayor of Brooklyn*, 4 Comst. 195; *Mills v. City of Brooklyn*, 32 N. Y. 489; *Wilson v. Mayor of N. Y.*, 1 Denio, 595; 4 Mich. 441; 10 Gray, 28; 13 Gray, 601; *Pettigrew v. Village of Evansville*, 25 Wis. 223; *Alexander v. City of Milwaukee*, 16 id. 256.

*L. P. Wetherby* and *H. A. Wilson*, for respondent, cited 1 Hilliard on Torts, 584, 586; *Earl v. De Hart*, 1 Beasl. 280.

DIXON, C. J. In *Pettigrew v. The Village of Evansville*, 25 Wis. 223, this court had occasion to examine the subject and express its views very fully as to the rights and liabilities of conterminous proprietors of lands with respect to the obstruction and flow of mere surface water; and to say when, in its opinion, and under what circumstances, by what means, and to what extent, the owner of land might obstruct and prevent the natural and customary flow thereon of such water, and turn the same back upon or off on to or over the lands of others, without liability for injuries thus caused to the lands of other proprietors. The question was discussed in several of the aspects in which it has arisen and been considered by the courts, and many, probably most, of the cases relating to it cited and examined; and an attempt was made to point out and define the rights and duties of owners of lands in those particulars which heretofore have been and hereafter doubtless will be the most frequent subject of controversy. The result of that examination was, that this court rejected the doctrine of dominant and servient heritage of the civil law respecting the natural flow of such water, which is the rule of some of the states, and adopted the very opposite

doctrine of the common law of England as held and expounded by the courts of that country and also by those of several of our own American states. The doctrine of the civil law is, that the owner of the upper or dominant estate has a natural easement or servitude in the lower or servient one, to discharge all waters falling or accumulating upon his land, which is higher, upon or over the land of the servient owner, as in a state of nature; and that such natural flow or passage of the water cannot be interrupted or prevented by the servient owner to the detriment or injury of the estate of the dominant or any other proprietor. Such seems to be the rule in the states of Pennsylvania, Iowa and Illinois, and perhaps in Missouri and Ohio. *Kaufmann v. Griesemer,* and *Martin v. Riddle,* 26 Pa. St. 407 and 415; *Livingston v. McDonald,* 21 Iowa, 160; *Gillham v. Madison Co. R. R. Co.,* 49 Ill. 484; *Laumier v. Francis,* 23 Mo. 181; *Butler v. Peck,* 16 Ohio St. R. 334. The facts in the Ohio case were in all material respects the same as those in *Pettigrew v. The Village of Evansville,* and it distinctly affirms the same principle. The doctrine of the common law is, that there exists no such natural easement or servitude in favor of the owner of the superior or higher ground or fields as to mere surface water, or such as falls or accumulates by rain or the melting of snow; and that the proprietor of the inferior or lower tenement or estate may, if he choose, lawfully obstruct or hinder the natural flow of such water thereon, and in so doing may turn the same back upon or off on to or over the lands of other proprietors, without liability for injuries ensuing from such obstruction or diversion. This is the rule in England, and in Massachusetts, New York, Connecticut, Vermont, New Jersey and New Hampshire, as will be seen by the authorities cited in *Pettigrew v. The Village of Evansville,* and also the following: *Bowlsby v. Speer,* 31 New Jersey Law Reports (2d Vroom), 351; *Dickinson v. Worcester,* 7 Allen,

19; *Chatfield v. Wilson*, 28 Vt. 49; *Sweet v. Cutts* (Sup. Ct. N. H.), 11 Am. Law Reg. (N. S.) 11; *Trustees v. Youmans*, 50 Barb. 316; *Waffle v. N. Y. Central Railroad Co.*, 58 Barb. 413. Excluding from its operation surface water falling or accumulating on his own land, which, as decided in *Pettigrew v. The Village of Evansville*, the proprietor may not divert or cause to flow upon the land of another to his injury, the rule of the common law is correctly stated in *Bowlsby v. Speer*, that no legal right of any kind can be claimed, *jure naturæ*, in the flow of surface water; so that neither its retention, diversion or repulsion is an actionable injury, even though damage ensue. An examination of the last named case will also show that the case of *Earl v. De Hart*, 1 Beas. 280, cited and relied upon in argument here, has been virtually overruled. The doctrine of dominant and servient heritage, so far as it may be supposed to have been sustained by the decision of the chancellor and his conclusion upon the facts of the case before him, which were in all material respects the same as in *Bowlsby v. Speer* and in this case, that it was a water-course or stream which was there filled up and obstructed, were directly and emphatically repudiated.

Such being the rule of the common law, which is the law of this state, and it also having been held in *Pettigrew v. The Village of Evansville*, that cities, towns and villages, as the owners of lands for highway and other public purposes, have the same rights to obstruct or repel the flow of surface water as other proprietors, it follows that the plaintiffs established no cause of action against the city, unless the ravine or hollow in question had the proper qualities of, and constituted what is known in law as, a *water-course*, as distinguished from a ravine, hollow or other depression in land through which, in times of rains, heavy showers and melting snows, the surface water is accustomed to escape. The term "water-course"

is well defined.   There must be a stream *usually* flowing in a particular direction, though it need not flow continually.   It may sometimes be dry.   It must flow in a definite channel, having a bed, sides or banks, and usually discharge itself into some other stream or body of water.   It must be something more than a mere surface drainage over the entire face of a tract of land, occasioned by unusual freshets or other extraordinary causes.   It does not include the water flowing in the hollows or ravines in land, which is the mere surface water from rain or melting snow, and is discharged through them from a higher to a lower level, but which at other times are destitute of water.   Such hollows or ravines are not in legal contemplation water-courses.   *Shields v. Arndt*, 3 Green's Ch. 234; *Luther v. Winnisimet Co.*, 9 Cush. 171; Washburn on Easements, 209–210.

The testimony upon this point has been correctly collated by counsel, and is as follows.   One witness testified: " A ravine ran across the premises, diagonally in a southwesterly direction; there was no constant stream there; it only ran there during wet weather, and when snow thawed."   Another: " There was a ravine across the premises; the water ran down the ravine every heavy rain we had."   Another: " Water has always run through the ravine in wet seasons, rain or thaw."   Another: " I know the ravine in question; the water runs in this ravine only in the spring of the year when snow goes off, and in very heavy rains or long continued rains; does not run to exceed twenty days in the year; no water runs in the ravine except as I have stated; it is not a stream with banks, but simply a sag in the ground, but spreads out further down, without any particular channel."   Another one testified: " I know the ravine running across the premises; water runs there after a heavy rain and melting of snow."   And another: " During melting of snow and heavy rains,

water runs in this ravine; there is more or less water runs in this ravine in the spring and fall; during wet and rainy weather, after the ground becomes saturated with water, a slight rain would cause water to run down the ravine." And the seventh and last witness examined, said: "Water has run in this ravine after heavy rains and in the spring of the year; I have seen a flood of water run there at one time, and in half a day none would run there; until they made the ditch back of the court-house, water would hold on longer than now; a month longer."

Such is a statement of all the testimony as given by the witnesses themselves; from which we think it clearly appears that it was a mere occasional flow of surface water down the ravine or hollow in question, which was obstructed by the agents and officers of the city, and not a stream or water-course within the meaning of the law on that subject. As observed in some of the decisions, it would be highly unreasonable and mischievous to attach the legal qualities of water-courses to ravines and hollows thus serving as conduits for mere occasional accumulations of surface water; and especially would it be so within the limits of large towns, cities and villages, where the population is dense and the quantity of land owned or occupied by each individual or family very small. In such cases the universal understanding and practice is, that owners of lots may fill them up or change their natural surface to suit their own tastes or convenience, and so as to obstruct or repel the surface water coming from the lots of others, without liability for injury; and that the public authorities have the same rights and privileges with respect to streets, squares and other public grounds. In such cases and as to such property the doctrine of dominant and servient heritage is rejected by those courts which hold to the rule of the civil law. *Bentz v. Armstrong*, 8 Watts and Serg. 40; *Livingston v. McDonald*, 21 Iowa, 174.

In no view of this case, therefore, does it seem that the plaintiffs established any cause of action. No actionable negligence or carelessness on the part of the agents or officers having charge of the work was shown. The work of grading the street was skillfully and properly done, unless the omission to put in a culvert to carry off the surface water from the plaintiffs' premises made it otherwise. It follows from what has already been said, that the city was not bound to do this; and, besides, it has, in one case at least, been held on general principles that a municipal corporation is not liable to a private action for damages accruing from such a cause. *Mills v. City of Brooklyn*, 32 N. Y. 489.

In *Bowlsby v. Speer*, the court, first stating the rule of the common law, that no right of any kind can be claimed in the mere flow of surface water, and that neither its retention, diversion, repulsion, or altered transmission is an actionable injury, even though damage ensues, observe : " How far it may be necessary to modify this general proposition in cases in which in a hilly region, from the natural formation of the surface of the ground, large quantities of water, in times of excessive rains, or from the melting of heavy snows, are forced to seek a channel through gorges or narrow valleys, will probably require consideration when the facts of the case shall present the question. It would seem that such anomalous cases might reasonably be regarded as forming exceptions to the general rule."

This exception, or suggested exception, seems sound and just. The rule itself is established in favor of agriculture, and of the right of every owner to make the most profitable use of his own land. But where, in such exceptional cases, it appears that considerable tracts of land are drained through ravines or narrow valleys, and would otherwise be submerged or greatly injured by the accumulation and presence of surface

water, so that the rule would operate adversely to the interests of agriculture and be productive of more harm than good, it would seem that it ought to give way, or its application be suspended. At all events, the suggestion presents a contingency, or possible class of cases, with respect to which this court should not be regarded as having expressed any opinion. Nor should the court be understood as deciding that the right of the land owner to obstruct or divert the natural flow of surface water is without limit or qualification by what may be necessary in the reasonable use and improvement of his own land. He may not do so wantonly or unnecessarily, or from mere motives of malice. In *Sweet v. Cutts*, the rule established is, that it is the right of every land owner to change the diffusion of surface water at his will and pleasure, provided it be done in good faith, in the enjoyment and for the greater usefulness of his own land. It is not the intention, nor has the court any desire here, to anticipate the future, or to lay down, or attempt to lay down, any rule for the decision of future distinguishable cases. Such cases will, and can only properly, be decided when they arise. The decision here is confined strictly to the question made by the record under examination.

*By the Court.*—Judgment reversed, and a new trial awarded.