[No. 19337. Department Two.—July 31, 1894.]

# THE LOS ANGELES CEMETERY ASSOCIATION, APPELLANT, *v.* THE CITY OF LOS ANGELES, RESPONDENT.

WATERCOURSE—INDEPENDENT FLOW OF WATER.—In order to constitute a watercourse, it must have a source independent of that fitful and occasional character that results from the falling of rain or the melting of snow, and must be a stream flowing in a definite channel, having a bed, sides, or banks, though it need not flow constantly, and may sometimes be dry.

ID.—SURFACE WATER FLOWING IN HOLLOWS OR RAVINES.—A watercourse does not include mere surface water flowing in hollows or ravines as a result of rain or melting snow, which at other times are destitute of water.

ID.—NATURAL FLOW OF SURFACE WATER—LAW OF CALIFORNIA.—In California, the doctrine of the civil law has been substituted for the common-law rule as to the easement in favor of the owner of an upper estate to discharge surface waters falling or accumulating on his higher land upon or over the lower lands of the servient owner, as they were accustomed to flow in a state of nature, though this doctrine has no application to lots held in cities and towns, where changes and alterations in the surface are essential to the enjoyment of such lots.

ID.—ESCAPE OF SURFACE WATER—DEFINED CHANNEL—LIABILITY OF MUNICIPAL CORPORATIONS.—The general rule that municipal corporations,

in the grading and improvement of streets, are not bound to provide for the escape of mere surface water, has an exception where the surface water, owing to the conformation of the adjoining country, has formed for itself a definite channel in which it is accustomed to flow, though such channel does not come within the common-law definition of a watercourse.

Id. —Consequential Damages of Authorized Acts—Sewer—Unexpected Flood.—Where a municipal corporation, in the construction or maintenance of a sewer, has sufficiently provided for the ordinary flow of surface water, and has not been guilty of negligence in the construction or maintenance of the sewer, it is not liable for the consequential damages of its authorized acts, resulting from an extraordinary flow of water, by reason of an unexpected flood, which could not have been reasonably foreseen.

Id.—Evidence of Freshets.—Evidence offered to show that another great freshet had occurred in the same place after the action was brought is inadmissible.

Id.—Appeal—Harmless Instruction.—An erroneous instruction, which the record shows could cause no injury to the plaintiff, is not ground for reversal.

Id.—Instructions Applicable to General Verdict—Special Verdict.— Error in instructions for defendants, which are applicable only to a general verdict, which had it been found in favor of the plaintiff would have been controlled by the facts specially found by the jury, upon which it is the duty of the court to have entered a judgment in favor of the defendants, is not ground for a reversal.

Appeal from a judgment of the Superior Court of Los Angeles County.

The facts are stated in the opinion.

*A. J. Hudson,* and *M. C. Hester,* for Appellant.

*C. McFarland,* for Respondent.

Searls, C.—The plaintiff and appellant here is a corporation and the owner of some thirty-five acres of land situate within the city of Los Angeles, and devoted to the purposes of a cemetery.

The action is brought against the city of Los Angeles, a municipal corporation, to recover damages alleged to have been suffered by the construction of an embankment across an alleged watercourse, near to and below the cemetery, in which a culvert was constructed of such small size, and at such an elevation above the natural surface, that it was insufficient and unable to

carry off the water which in time of storms flows down said watercourse, whereby the water was backed up, upon and over a portion of said cemetery grounds depositing mud, debris, and filth thereon, and rendering such portion of said grounds unfit for cemetery purposes, and causing a deposit of mud, etc., washed from adjoining land in an artificial lake owned by plaintiff in said cemetery grounds.

The answer denied the material allegations of the complaint. Defendant had a general verdict in its favor. There was also submitted to the jury certain special issues, at the request of the respective parties, upon which they found. The appeal is from a final judgment in favor of defendant.

The following are the special issues submitted to the jury, with their answers thereto:

"SPECIAL ISSUES BY PLAINTIFF.

"The jury are instructed to answer the following questions of fact:

"I. Is there, and has there been during the time plaintiff owned said land, a natural watercourse for the passage of storm water, extending across a portion of said land, through which a large amount of water naturally runs whenever a heavy fall of rain occurs? A. There is.

"II. Did the defendant cause an embankment to be constructed across said watercourse immediately below the line of said land of plaintiff, tending to obstruct the natural flow of water therein, without providing a sufficient culvert or passage through the same for the storm water that ordinarily flows down said watercourse? A. It did not.

"III. Did the said embankment across said watercourse at any time within the two years immediately prior to the twenty-first day of November, 1891, cause the storm water that ordinarily flowed down said watercourse to overflow an artificial lake on plaintiff's said premises? A. It did not.

"V. Did said embankment, within the time men-

tioned in the last question, cause the said waters to overflow any of the lots of land laid out in said grounds for cemetery purposes?  A. It did.

"VII.  If you answer that said waters were so caused to overflow any of said cemetery lots, then what damage, if any, did plaintiff sustain by reason of the overflow of said cemetery lots?  A. No damage.

"SPECIAL ISSUES PRESENTED TO THE JURY AT THE "REQUEST OF THE DEFENDANT.

"1. Was the filling up of First street caused by the grading of the street by the city authorities?  A. It was.

"2. Was the water which was backed up on plaintiff's property water of a running stream, running in a channel between well-defined banks?  A. No.

"3. Was the water which was backed up upon plaintiff's property surface water caused by a rain?  A. Yes.

"4. Was the culvert across First street of sufficient size to carry off the ordinary flow of surface water? A. Yes.

"5. Was the city official who designed the culvert a person competent to judge of the size and dimensions which the same should be constructed?  A. Yes.

"6. Was the culvert constructed in a good workmanlike manner?  A. Yes.

"8. Was the overflow caused by an extraordinary or unusual rain?  A. Yes.

"9. Could plaintiffs have prevented their ground from being overflowed or damaged by filling up their property to a level with the grade of the street?  A. No.

"10. Did water flow across plaintiff's premises at any other time except in times of rains or floods?  A. No.

"[Indorsed]: Filed March 21, 1893."

A watercourse is defined to be "a running stream of water; a natural stream, including rivers, creeks, runs, and rivulets" (Black's Law Dictionary, title "Watercourse.")

There must be a stream usually flowing in a particular direction, though it need not flow continually.  It

may sometimes be dry. It must flow in a definite channel, having a bed, sides, or banks, and usually discharge itself into some other stream or body of water. It must be something more than a mere surface drainage over the entire face of a tract of land, occasioned by unusual freshets or other extraordinary causes. It does not include the water flowing in the hollows or ravines in land, which is the mere surface water from rain or melting snow, and is discharged through them from a higher to a lower level, but which at other times are destitute of water. Such hollows or ravines are not, in legal contemplation, watercourses. (Angell on Watercourses, 3–7; *Shields* v. *Arndt*, 4 N. J. Eq. 234; *Hoyt* v. *City of Hudson*, 27 Wis. 656; 9 Am. Rep. 473; *Luther* v. *Winnisimmet Co.*, 9 Cush. 171; Washburn on Easements, 209, 210.)

The complaint does not, in terms, aver that the stream in question is a natural watercourse. The allegation is, that it is " a natural watercourse for the passage of storm water, extending across a portion of the said lot two, over which a large amount of water naturally runs whenever a heavy fall of rain occurs."

The first finding submitted to the jury by plaintiff, upon which they found in the affirmative, is in almost the exact language of this allegation.

As will be seen, the subsequent findings establish the following propositions:

1. The water which backed upon plaintiff's land was not that of a running stream running in a channel between well-defined banks.

2. It was surface water caused by rain.

3. Water did not flow across plaintiff's premises except in times of rain or floods.

These findings are supported by the evidence, and show that the alleged stream is not a watercourse.

In order to constitute a *watercourse*, " it must have a source independent of that fitful and occasional character that results from the falling of rain or the melting of snow." (Wood on Nuisances, 3d ed., 415, citing

*Eulrich* v. *Richter,* 37 Wis. 226; *Barnes* v. *Sabron,* 10 Nev. 217; *Shields* v. *Arndt,* 4 N. J. Eq. 234, and many other cases are to like effect.)

"And this would be the case," says Wood, at page 416, " so far as water arising from the melting of snow and the falling of rain is concerned, even though at such seasons it took a definite channel."

Indeed, it may be said that in all regions of country having a broken surface and subject to heavy rainfall, surface water does make for itself or assume definite channels in seeking, pursuant to the law of gravitation, a lower level.

The law may be thus stated:

1. At common law no natural easement or servitude existed, as between conterminous owners of land, in favor of the owner of the superior or higher land, and against the owner of the lower tenement for the flow of mere surface water, or such as falls or accumulates by rains or the melting of snow; and the proprietor of the inferior or lower tenement or estate might, at his option, lawfully obstruct or hinder the flow of such surface water thereon, and in so doing might turn it back or off of his own lands, and onto and over the lands of other proprietors, without liability by reason of such obstruction or diversion.

2. Under the civil law, the owner of the upper or dominant estate had a natural easement or servitude in the lower or servient estate to discharge all surface waters falling or accumulating on his higher land upon or over the lower lands of the servient owner as they were accustomed to flow in a state of nature; and such natural flow could not be interrupted or prevented by the lower proprietor or servient owner to the detriment or injury of the estate of the dominant proprietor. (Washburn on Easements, 4th ed., 573, and authorities cited; *Hoyt* v. *City of Hudson,* 27 Wis. 659; 9 Am. Rep. 473; Wood on Nuisances, 3d ed., sec. 385; *Gillham* v. *Madison County R. R. Co.,* 49 Ill. 484; 95 Am. Dec. 627.)

3. In a considerable number of the states of our

union, California included, the doctrine of the civil law has been substituted for the common-law rule, and it is held, as in *Ogburn* v. *Connor*, 46 Cal. 347, 13 Am. Rep. 213, that where two parcels of land belonging to different owners are adjacent to each other, and one is lower than the other, and the surface water from the higher tract has been accustomed by a natural flow to pass off over the lower tract, the owner of such upper tract of land has an easement to have the water flow over the land below, and the lower tract is charged with a corresponding servitude. (*Gray* v. *McWilliams*, 98 Cal. 157; 35 Am. St. Rep. 163.)

4. The doctrine of the civil law, in reference to a servitude in the lower tenement in favor of the upper or dominant tenement, for the flow of surface water, had no application to lots held in cities and towns, where changes and alterations in the surface were essential to the enjoyment of such lots, and this rule has been very generally adopted in this country. (*Ogburn* v. *Connor*, 46 Cal. 347; 13 Am. Rep. 213, and cases there cited; *Corcoran* v. *City of Benicia*, 96 Cal. 1; 31 Am. St. Rep. 171; Dillon on Municipal Corporations, secs. 1039–44.)

5. An apparent exception to the general rule, that municipal corporations, in the grading and improvement of streets, are not bound to provide for the escape of mere surface water, has been hinted at in some of the cases and established in others, in that class of cases where the surface water, owing to the conformation of the adjacent country, has formed for itself a definite channel in which it is accustomed to flow, in which cases it is held, as in *Conniff* v. *San Francisco*, 67 Cal. 45, that the municipal corporation had no right, pursuant to a general plan for the grading and improvement of Montgomery avenue, to erect a solid embankment without a culvert or waterway, so as to obstruct the flow of a watercourse which flowed in a well-defined channel, although it served only to discharge the drainage or surface water from the adjacent hills, and, according

to the statement of the case, did not come within the common-law definition of a watercourse. (*Hoyt* v. *City of Hudson*, 27 Wis. 663, 664; 9 Am. Rep. 473; Dillon on Municipal Corporations, secs. 1051, 1051 *a*, subd. 3; *Lehn* v. *San Francisco*, 66 Cal. 76; *Corcoran* v. *City of Benicia*, 96 Cal. 1; 31 Am. St. Rep. 171; *Gibbs* v. *Williams*, 25 Kan. 210; 37 Am. Rep. 241; *Palmer* v. *Waddell*, 22 Kan. 352.)

In the case last quoted it was said: "The rule that the owner of a tract of land may obstruct the flow of surface water across his land appears to and does have an exception, which is where surface water having no definite source is supplied by the falling rains and melting snow from a hilly region or high bluffs, and, owing to the natural formation of the surface of the ground, is forced to seek an outlet through a gorge or ravine, and by its flow assumes a definite or natural channel, and escapes through such channel regularly during the spring months of every year and in seasons of heavy rains; and such has always been the case so long as the memory of man runs," it was held that such channel so far possessed the attributes of a watercourse, that the owner of lands through which such watercourse ran could not lawfully turn the flow upon adjacent lands to their injury and damage.

The facts of this case bring it within the exception stated. It therefore remains to inquire whether, conceding the case within the exception noted, the municipal corporation is liable.

It appears that as early as 1885 the board of public works recommended to the city council that the superintendent of streets be instructed to lay a cement pipe thirty inches in diameter across Alviso, now First, street, at the point in question. The matter was, for some cause, referred back to the board and city engineer, and on the tenth day of November, 1885, they reported to the council recommending a brick culvert, which report was adopted, and a culvert of brick, say seventy feet in length and thirty inches in diameter, was in 1886 or

1887 constructed across the street, and a fill of say five feet was made over the culvert to bring the street up to grade. The evidence tends to show that the work was well done according to a regular plan, and in accordance with lawful municipal authority in the necessary improvement of the street, and that the city engineer was a competent person.

The culvert served to carry all the water coming down the ravine until about Christmas, 1889, when, in consequence of an unusually heavy rain, a flood came and the culvert, although in good order, proved insufficient to carry the water, and it was backed up over a portion of the cemetery grounds, with the result as complained of or found by the jury.

But three witnesses testified as to the character of the flood. One said " the flood of 1889 was an extraordinary flood . . . . the brick culvert through First street was not large enough to let the water of heavy rains through." Another testified: " I remember the rains about Christmas of 1889. They were unusually heavy. So much water came down the ravine where I live that we thought there had been a cloud burst. I have lived in Los Angeles over thirty years and never saw as heavy a rain as the storm about Christmas, 1889." The third testified he had lived in Los Angeles many years, had noticed the rainfall, and never saw such a rainfall in as short a space of time as that of Christmas, 1889.

Assuming, as was said by Chief Justice Gray, in *Hill* v. *Boston,* 122 Mass. 344, 23 Am. Rep. 332: " If a city or town negligently constructs or maintains the bridges or culverts in a highway across a navigable river or a natural watercourse, so as to cause the water to flow back upon and injure the land of another, it is liable to an action of tort to the same extent that any corporation or individual would be liable for doing similar acts "; and still we fail to see, in the face of the findings here, how the defendant can be held liable.

A municipal corporation is not liable at common law for the consequential damages of authorized acts. (Dil-

lon on Municipal Corporations, sec. 989.)   The findings of the jury negative the charge of negligence in the construction or maintenance of the sewer built by the defendant.

Where, as in the present case, the overflow was occasioned by an extraordinary flood, which could not have been reasonably foreseen, it does not, at common law, give a right of action, and does not constitute a damage to private property for a public use within the purview of section 14 of article I of our state constitution.

If the immediate, direct, and necessary effect of the embankment had been to damage plaintiff's property, it might, with propriety, be said the liability of the defendant would arise under the constitution; but for an unforeseen calamity, beyond the ken of human foresight, without the pale of previous experience, there is no such liability.

The court did not err in striking out from the issue presented to the jury (No. 3), at the request of plaintiff, the word "naturally," and inserting the word "ordinarily."

No doubt the water, in case of a deluge, *naturally* flows to a lower level, through fixed channels or otherwise; but it was the water which *ordinarily* flowed in times of storm for which defendant was bound to provide.

Had the evidence showed that the waterway in question had previously been subject to great freshets, it would have been the duty of defendant to provide adequate means to meet them; but there was no such showing.   (*Mayor etc.* v. *Bailey*, 2 Denio, 433.)

The evidence offered to show that an equally great freshet had occurred in the same place in 1891, and, after this action was brought, was inadmissible.

The experience which dictated to defendant the necessary size of the culvert to accomplish the object in view was that of the past, at the date of its construction, and the possibilities or probabilities of the future could reasonably be predicated only upon the past, subject, of

course, to such future changes as experience might dictate to be reasonably necessary.

The fourth instruction given by the court at the request of defendant, to the effect that if the injury to plaintiff was caused by grading of a public street to its established grade, and that plaintiff could grade its property so as to conform to the established grade, whereby the surface water would flow off, and not stand upon, its property, the plaintiff could not recover, was erroneous as applied to the facts of the case. Such is no doubt the rule as to ordinary surface water; but it has no application to a case where surface water assumes the form of a regular stream or watercourse, and comes within the exception hereinbefore stated.

The error, however, caused no injury to the plaintiff, as the jury found specially that plaintiff could not have prevented its ground from overflow by filling it to grade.

The objections to other instructions need not be specially noticed, for the reason that, if erroneous, and if a general verdict had been found in favor of plaintiff, it would have been controlled by the facts specially found by the jury; upon which facts it would have been the duty of the court to have entered a judgment in favor of the defendant, notwithstanding such general verdict in favor of plaintiff. (Code Civ. Proc., sec. 625.)

The judgment appealed from should be affirmed.

Belcher, C., Vanclief, C., and Haynes, C., concurred.

For the reasons given in the foregoing opinion, the judgment appealed from is affirmed.

McFarland, J., Fitzgerald, J., Harrison, J.