[Civ. No. 13619. First Dist., Div. Two. Aug. 2, 1948.]

PETER BACIGALUPI, Appellant, v. T. FRED BAGSHAW et al., Respondents.

Freitas, Keating & Duffy for Appellant.

Bronson, Bronson & McKinnon for Respondents.

DOOLING, J.—Plaintiff and appellant owns a home in Tiburon. This action was brought by him against the county of Marin and respondent Bagshaw as the member of the board of supervisors of that county having supervision of and responsibility for road work and surface water drainage improvements in the supervisorial district wherein Tiburon is located upon the claim that appellant's property was damaged by flood or storm waters diverted onto his property by certain drainage works installed by the respondent county. The first cause of action against both defendants was based, as to the county on the Public Liability Act of 1923 (Stats. 1923, p. 675; 2 Deering's Gen. Laws, Act 5619), and as to Bagshaw on section 1953, Government Code. The second cause of action was against the county alone on the theory of damage to private property for public use. (Cal. Const., art. I, § 14.)

The evidence shows that on December 22, 1945, surface waters were discharged onto appellant's property resulting in substantial damage. This property fronts on the south side of Mar East Road. Tiburon in this area slopes rather precipitately from north to south. Above Mar East Road is a road known as Tiburon Boulevard and connecting Mar East Road

with Tiburon Boulevard from the west is a road known as Mar Centro Drive. The land slopes steeply from Tiburon Boulevard to Mar East Road and Mar Centro Drive also slopes toward Mar East Road. The portion of Mar East Road easterly of its intersection with Mar Centro Drive is a public road but not a part of the county highway system. Tiburon Boulevard and Mar Centro Drive are both county roads. Immediately to the west of appellant's property, but not impinging upon it, is a canyon or swale which in the absence of any artificial works would be a natural watercourse during rainy weather. The county has constructed a number of flumes and ditches in the vicinity which will be more particularly described hereafter. On the night of December 22, 1945, there was a heavy rainfall and mud and water ran onto appellant's property and into his house causing the damage complained of. Investigation proved that a culvert across a short extension of roadway between Mar East Road and Mar Centro Drive, designated at the trial as culvert No. 2, had become stopped up and the water which would otherwise have run through it down the canyon or swale to the west of appellant's property was running over the road and onto appellant's land.

We cannot agree with appellant that the evidence was such as to compel a verdict in his favor. While he proved notice from himself to Bagshaw and the county of a claimed defective and dangerous drainage system, respondent Bagshaw testified that the county had funds to reconstruct culvert No. 2 and the witness Clow, Deputy County Road Commissioner, testified that culvert No. 2 was probably not adequate for a big storm such as occurred on December 22, 1945; there was some testimony that the storm of December 22, 1945 was of unparalleled magnitude so that the jury might have found that the drainage system including culvert No. 2 was adequate for any rainfall that might be reasonably anticipated.

However, there is error in the record which compels a reversal. One of the defenses urged against the plaintiff before the jury was grounded on the contention that because culvert No. 2 ran under a road which had not been made a county highway the county had no legal right or authority to expend county funds upon its improvement or repair and therefore the defendants could not suffer liability on the theory that it was improperly or negligently constructed or maintained. Respondent Bagshaw and county employees who were called as witnesses for the defendants pointed up this

theory by testifying to their opinion that they had no authority to do any work on culvert No. 2 because it was not under a county road.

This theory of the defendants finds no justification in the law. The evidence is without conflict that culvert No. 1 (throughout we use the numbers given the several culverts on the trial) was constructed to carry water beneath Tiburon Boulevard, admittedly a part of the county road system. This water is spilled into the natural water course above referred to in which the county constructed a ditch to carry it directly to culvert No. 2. Along the upper side of Mar Centro Drive the county constructed a ditch to prevent the flooding of that road. Mar Centro Drive is a part of the county road system. The water in this ditch is also conducted to the intake of culvert No. 2. To the east of culvert No. 1 on Tiburon Boulevard is another culvert constructed by the county which conducts water collected above Tiburon Boulevard beneath that road and spills it down the hillside toward culverts 4 and 5, constructed by the county under Mar East Road to the east of appellant's land. The county constructed a ditch along the upper side of Mar East Road between culverts 4 and 2 which diverts additional water to the intake of culvert No. 2. The evidence shows without contradiction that the county constructed and installed culvert No. 2 as well. The whole constitutes an integrated system of drainage designed to protect Tiburon Boulevard and Mar Centro Drive, both of which are admittedly county roads. ■ The construction of such a system falls well within the county's statutory powers. (Sts. & Hy. Code, §§ 961, 962, 964.) We need only quote from section 964: ''Whenever the board finds that any county highway has been damaged or is in danger of being damaged by storm waters or floods, the board shall adopt all measures necessary to repair or prevent such damage.''

■ The county could not lawfully, to protect those two county highways, divert storm waters from Tiburon Boulevard and Mar Centro Drive to the location of culvert No. 2 and there leave such waters to spread out over the adjoining private property. It was its duty, having collected such waters at that point, to provide an adequate method of carrying them away. This it attempted to do by the construction of culvert No. 2.

■ The county is not limited to the area embraced within county roads in constructing flumes, ditches and other works

for the protection of such roads from storm and flood waters. It is given the power of condemnation to acquire land or easements for that purpose by Streets and Highways Code, section 965, subdivision (d). Since culvert No. 2 was within the area of a public, although not a county, road over which the public already had an easement for highway purposes the county probably needed no additional easement for culvert No. 2. In any event the evidence sufficiently shows that, if necessary, it had acquired such easement by prescriptive use. ■ A flume, ditch or culvert maintained even on private property by a county as a part of a flood or storm water control system is said to be a public work within the purview of the Public Liability Act. (*Young* v. *County of Ventura,* 39 Cal.App.2d 732, 738 [104 P.2d 102].)

We are satisfied that having elected to converge storm waters at the point where culvert No. 2 is located as a protection to the two roads which are admittedly county roads the county had not only the authority, but the duty as well, to construct and provide an adequate conduit for such waters at that location.

■ It follows that the trial court committed error in giving the following instruction:

"You are instructed that neither the County of Marin nor any of its officers, agents or employees were nor are authorized to remedy the dangerous or defective conditions upon any public road within said county unless that road is first taken into the County Road System in the manner provided by law.

"The acts of any officer, agent or employee of said County in altering, repairing, improving or doing any other work upon a public highway not previously taken into the County Highway System would be an unauthorized expenditure of county funds, in excess of the authority of said officers, agents and employees, and would not create any liability on the part of said County."

We need not decide in this case whether as applied to the maintenance or improvement as a means of travel of a public road, not taken into the county road system, this instruction correctly states the law or not. A reading of the transcript demonstrates that the instruction was not directed to that question. There was no claim that any failure to properly construct or maintain Mar East Road or its extension as a highway contributed to appellant's damage. The claim of damage was directed to the alleged improper main-

tenance or construction of culvert No. 2 as an integrated part of the drainage system established in that area by the county. Repeatedly the defense witnesses testified to their opinion that the county had no authority to repair or improve culvert No. 2 because it was not constructed across a county road. The instruction could only have been understood by the jury as applying to culvert No. 2. Applied to culvert No. 2 it was erroneous and necessarily prejudicial. Even if the jury found, as they were entitled to do under the evidence, that culvert No. 2 was inadequate and negligently maintained, the instruction complained of would compel them to bring in a verdict for the defendants.

For this error the judgment is reversed.

Nourse, P. J., and Goodell, J., concurred.