[Civ. No. 5012.   Fourth Dist.   Nov. 30, 1954.]

RENE L. CALLENS et al., Respondents, v. THE COUNTY OF ORANGE, Appellant.

Forgy, Reinhaus, Miller & Kogler for Appellant.

Head, Jacobs, Corfman & Jacobs for Respondents.

GRIFFIN, J.—Defendant and appellant county of·Orange, after judgment on a jury verdict for plaintiffs for $8,000 damages, filed this appeal. It is claimed, in one cause of action, that the damage to plaintiffs' property was by reason of defendant's failure to erect a dam or other obstruction sufficient to prevent surface and flood waters from flowing upon plaintiffs' land, and in a second cause of action, that defendant negligently and wrongfully excavated and cut drainage ditches and changed the natural course and flow of surface and flood waters so as to cause them to flow over and upon plaintiffs' land and wash it away and render it unfit for agricultural purposes. Approximately five acres

of land, amounting to 3,800 cubic yards of dirt, were washed away.

Defendant entered a general denial with the exception that it admitted certain work was done, and pleaded as an affirmative defense, contributory negligence of plaintiffs, act of God, and that the land owned by plaintiffs constituted a natural swale or water course across it, and that the water, if any, which gathered upon plaintiffs' property was following the natural drainage in the area.

The first question raised on this appeal involves the giving of claimed erroneous and conflicting instructions in regard to the duty of the county in respect to handling surface and storm waters. The two instructions involved are:

No. 1. "You are instructed that the County of Orange in order to protect its streets and highways cannot lawfully through the construction of ditches or gutters collect surface and storm waters at a central point and there leave such waters to spread out over the adjoining private property. Having collected such storm waters, the County of Orange had the duty to provide an adequate method of carrying them away. If you find that the County of Orange failed in this duty as a result of which plaintiffs were damaged, you shall find in favor of the plaintiffs."

No. 2. "A lower-land owner has the lawful right to complain of those who by interference with natural conditions cause surface waters to be discharged in greater quantity or in a different manner upon his land than would occur under natural conditions. If the preponderance of evidence in the present case indicates that the County of Orange interfered with natural conditions thereby causing surface waters to be discharged in a greater quantity or in a different manner upon the land of Rene and Virginie Callens than would occur under natural conditions, you are instructed to return a verdict in favor of the plaintiffs."

It is claimed that the two instructions given are contrary to the decisions in *O'Hara* v. *Los Angeles Flood Control Dist.*, 19 Cal.2d 61, 63-64 [119 P.2d 23], and *House* v. *Los Angeles County Flood Control Dist.*, 25 Cal.2d 384, 392 [153 P.2d 950], contending that as applied to a private landowner he may not obstruct the surface waters that naturally drain across his property from adjoining land, but that a governmental agency, in constructing public improvements such as streets and highways may validly exercise its police power to obstruct the flow of surface waters from running in a

natural channel without making compensation for the result-
ing damage, and that the construction of improvements along
a stream for purposes of flood control is no less essential to
the public health and safety than the grading of streets;
and that a governmental agency should no more be liable
in one case than in the other for obstructing surface waters;
that accordingly the defendant is under no obligation to
compensate for the damage caused by the obstruction; that
under instruction No. 2, a verdict could be brought in against
the county; and that there is no way of telling whether the
jury followed this instruction or instruction No. 1.

According to plaintiff's evidence, with the exception of floods
when the Santa Ana River broke from its banks, no water
had drained across plaintiffs' lands until January, 1952;
that in that year the county road department dug so-called
gutters extending north and south on Verano Street, Ward
Street and Wright Street, the gutters on Verano and Ward
stopping at Talbert Road and the gutter on Wright proceed-
ing one-half mile farther south and stopping at Ellis. It
also dug a gutter east and west on Talbert Road, stopping at
Wright Street. The ditch on Wright Street was larger than
the other ditches and larger than had been dug in previous
years. The result was that all water draining into the
ditches at Newhope, Verano and Ward Streets drained into
Talbert. The water then flowed west on Talbert to Wright
Street, the distance from Newhope to Wright being 1½ miles.
This added volume of water joined with the water from Wright
and it all went south on Wright one-half mile to Ellis. There
was no outlet at Ellis Street. This created a new and violent
stream across respondents' land resulting in severe damage.

According to defendant's evidence, at the time plaintiffs
purchased the land in 1912, there were drainage ditches run-
ning from north to south along the roads in the general vicin-
ity of the property. They were from 11 to 15 feet deep and
20 feet wide at the top, and were one-half mile apart. In
1940, the ditches were tiled in and after this work was done
a slight depression of approximately 18 inches was left on
top of the ground, which came to the corner of plaintiffs'
property at Wright and Ellis Streets, but the tiled-in ditches
under the ground continued on south. After the ditches had
been tiled in and prior to the flood of January, 1952, no
water came across plaintiffs' property. In 1943 plaintiffs
had leveled their ranch to grade north to south, the high
end being at the north. Prior to the leveling, plaintiffs had

no gullies or drainage areas or stream beds across their ranch. In 1916, the entire ranch was flooded because the Santa Ana River broke over its banks, and in 1952 the county enlarged or dug a ditch on Talbert Road and on Wright Street and came south to plaintiffs' corner and stopped. The ditch was larger than it had ever been before, and in 1952, a heavy rain occurred and water came across the property causing the damage related.

Defendant presented testimony showing that for the past 50 years during the periods of heavy rain when water collected in the vicinity of the property involved, it followed the course taken in January of 1952, and that the water in the general vicinity of plaintiffs' property always flowed in a southwesterly direction. Defendant introduced extensive aerial photographs covering the period from 1927 to the present time, with the idea of showing that water crossed plaintiffs' property at various times following the same general path as taken during the heavy rains of January, 1952. Extensive engineering testimony was taken and documentary evidence was introduced to show the center and gutter lines of Wright Street as they ran south of the intersection of Ellis Street. It is plaintiffs' position that defendant county, during the construction and deepening of ditches, diverted and accumulated surface waters from areas that would not normally drain across plaintiffs' land and then failed to provide an outlet therefor; that the work was done negligently; that this interference with natural conditions resulted in damage to plaintiffs' land, which had previously been free of drainage water.

■■ In California a private landowner may not obstruct the flow of surface waters that naturally drain across his property from adjoining land, but he may discharge them for a reasonable purpose into the stream into which they naturally drain without incurring liability to the lower landowners caused by the increased flow of the stream, and a governmental agency, in constructing public improvements such as streets and highways, may validly exercise its "police power" to obstruct the flow of surface waters not running in a natural channel without making compensation for the resulting damage. ■ Straightening, widening, or deepening the channel of a stream to improve the drainage entails no diversion of the waters therein. ■ There is no diversion if surface waters, flowing in no defined channel, are for a reasonable purpose gathered together and discharged

into the stream that is their natural means of drainage even though the stream channel is inadequate to accommodate the increased flow. (*O'Hara* v. *Los Angeles County Flood Control Dist.*, 19 Cal.2d 61 [119 P.2d 23]; *Archer* v. *City of Los Angeles*, 19 Cal.2d 19 [119 P.2d 1].)

Collected in the dissenting opinions in the Archer case are a legion of authority sustaining the rule set out in 43 Corpus Juris 1126, in reference to the exemption of a municipality from liability, which recites:

"But according to a number of authorities this rule does not extend to exempt a municipality from liability for negligence in the adoption of a plan for drains or sewers, and where the municipal authorities negligently adopt or devise a plan or system which is obviously defective, or the unfitness of which has been demonstrated by previous experience, the municipality is liable for the resulting damage. It has also been laid down that the rule under discussion is subject to the distinction that where the plan adopted by a municipality must necessarily cause an injury to private property, equivalent to some appropriation of the enjoyment thereof to which the owner is entitled, then the municipality is liable, . . ."

See also *Pacific Seaside Home for Children* v. *Newbert Protection Dist.*, 190 Cal. 544 [213 P. 967], which is factually similar to the instant case. There it was alleged that the defendant constructed channels for the water of the Santa Ana River so defectively and negligently that they would not carry the waters of the stream; that had the defendant not changed the natural course of the river or in anywise interfered with its natural flow, the waters of the river would have flowed into Newport Bay, and no damage would have accrued to the plaintiff had the river been permitted to flow as it naturally would had not the defendant constructed its channel to divert the same; that the injury occurred to the plaintiff by reason of the fact that the defendant negligently drained the waters of the river in a channel which was too small, and which was negligently constructed and maintained and that by reason thereof plaintiff's land was damaged. The Supreme Court held this allegation to state a cause of action.

In *Conniff* v. *San Francisco*, 67 Cal. 45, 49 [7 P. 41], it was said:

"An individual has no right to collect in artificial channels mere surface water, and precipitate it upon the land of another. Nor has a corporation, whether public or private, the right to collect in such channels mere surface water pre-

cipitated by rain or snow over large districts, and throw it upon the property of another. . . . We know of no principle of law which justifies either a corporation or individual in stopping up by an embankment or dam a natural channel by which surface waters escape, obstruct the natural flow of such waters, and cause them to run over and permanently remain on another's property. Such conduct would be a most flagrant trespass on the rights of another in the shape of a direct invasion of his land amounting to a taking of it within the rule laid down in *Pumpelly* v. *Green Bay Co.*, 13 Wall. [U.S.] 166 [20 L.Ed. 557], . . ."

Even though the surface waters collected are discharged in a natural channel on the upper owner's land, he is liable for flooding the land of the lower owner where the cause of the flooding is the increase in the volume of the water flowing to the lower owner beyond the capacity of the stream. (*Archer* v. *City of Los Angeles*, 19 Cal.2d 19, 44 [119 P.2d 1].)

The true rule is said to be set forth in *LeBrun* v. *Richards*, 210 Cal. 308 [291 P. 825, 72 A.L.R. 336], where it is stated: " ' . . . From these rights and burdens, the principle follows that he has a lawful right to complain of others, who, by *interfering* with natural conditions, cause such surface water to be *discharged in greater quantity or in a different manner upon his land than would occur under natural* conditions.' " It holds that a different rule applies in the case of flood waters; that such waters are regarded as " 'a common enemy against which every man has a right to defend himself, regardless of the fact that the barriers he erects for the protection of his land may cause the flood to rise higher or flow with greater force upon his neighbors.' " (Citing cases.) (Italics ours.)

The jury in the instant case was so instructed.

Since the decision in the O'Hara case the Supreme Court gave further consideration to this subject matter in *House* v. *Los Angeles County Flood Control Dist.*, 25 Cal.2d 384 [153 P.2d 950], where it sustained plaintiff's cause of action against a Flood Control District for damages to plaintiff's land as a result of flooding. To some extent it endeavored to distinguish the facts in that case and the facts in the Archer case by saying that in the Archer case there was no evidence that defendant *negligently* diverted water out of its natural channel, and that in the O'Hara case there was no allegation of such diversion; that in the House case the allegations were

that the damages to plaintiff's property were caused by diversion of the water of a river out of its natural channel on the plaintiff's land by means of defective levees causing and allowing the water to burst out of its channel onto her land; that the Archer case held that since there would have been no cause of action stated against a private person for installing improvements in the stream accelerating the flow of the water but not diverting it out of its channel, no action for the same class of injury would lie against a governmental agency.

Here it was pleaded that the cutting and excavating of the drainage ditches changed the *natural* course and flow of the drainage waters in the area described; that such *negligent* cutting caused such waters to be diverted from their *natural* channel and flow across plaintiffs' property. The · evidence here is sufficient to support a finding that defendant county, through the construction and deepening of ditches, diverted and accumulated surface waters from areas that would *not normally drain* across plaintiffs' land and that it *failed to provide* an *outlet* therefor; that the work was done *negligently* and that this interference with natural conditions resulted in plaintiffs' land being inundated by a violent discharge of water with the resultant damage which, under natural conditions, would not have occurred. (*Andrew Jergens Co.* v. *City of Los Angeles,* 103 Cal.App.2d 232, 235 [229 P.2d 475]; *LeBrun* v. *Richards,* 210 Cal. 308, 315 [291 P. 825, 72 A.L.R. 336].)

Accordingly, the claim of exemption set forth in the O'Hara case that a government agency may validly exercise its "police power" to obstruct the flow of surface waters not running in a natural channel without making compensation would not apply to the facts here related. (*Farrell* v. *City of Ontario,* 36 Cal.App. 754 [173 P. 392].) In *Bacigalupi* v. *Bagshaw,* 87 Cal.App.2d 48, 51 [196 P.2d 66], it is said that a county may not lawfully, to protect two county highways, divert storm waters to a certain location and there leave such waters to spread out over the adjoining private property; that it was its duty, having collected such waters at that point, to provide an adequate method of carrying them away. (See also *Learned* v. *Castle,* 78 Cal. 454, 460 [18 P. 872, 21 P. 11]; 18 Cal.Jur. 1102, § 352; *Smith* v. *City of Los Angeles,* 66 Cal.App.2d 562, 580 [153 P.2d 69].)

Accordingly, instruction No. 1, as given, under the evidence produced, was not erroneous. Since the county government could not be held liable unless a private owner would

be liable under the same set of facts, instruction No. 2 was a proper instruction when considered in connection with instruction No. 1. (*Los Angeles Cemetery Assn.* v. *City of Los Angeles,* 103 Cal. 461 [37 P. 375].) No prejudicial error resulted under the holding in *Nunneley* v. *Edgar Hotel,* 36 Cal.2d 493, 500 [225 P.2d 497].

The next contention is that the trial court refused, on the ground that it had been covered, to give defendant's proffered instruction reading:

"If the water which flowed across the Callens property was following the natural water course or the natural drainage of the land in that area, and the defendant, County of Orange, did only that which was reasonable for the drainage of water from its roads, then your verdict shall be in favor of the defendant, . . ."

Since one of the defenses was that the water involved was following a natural water course, defendants were entitled to an instruction on that defense. The evidence on this subject was in conflict. However, we conclude that since the court did give a formula instruction from B.A.J.I. Nos. 101, 101-A, 102, 102-A, and 113, on the necessary elements to establish negligence, and gave defendant's instruction taken directly from a statement in the O'Hara case to the effect that "a government agency in constructing such improvements as streets and highways, may validly exercise its power to obstruct the flow of surface waters *not running in a natural channel* without making compensation for the resulting damage to property owners affected thereby" (Italics ours), the subject matter was sufficiently covered by these and other given instructions. While the proffered instruction might well have been given, no prejudicial error resulted.

The next complaint is that the court refused to instruct the jury that it was plaintiffs' duty to prove their damages by a preponderance of the evidence. This matter was sufficiently covered by other instructions given in the language of B.A.J.I. Nos. 21-A and 21-B.

Judgment affirmed.

Barnard, P. J., and Mussell, J., concurred.