[Civ. No. 5823.   Fourth Dist.   Aug. 22, 1958.]

ETTA E. STEIGER et al., Respondents, v. CITY OF SAN DIEGO, Appellant.

J. F. DuPaul, City Attorney, Alan M. Firestone, Chief Deputy City Attorney, and Frederick B. Holoboff, Deputy City Attorney, for Appellant.

McInnis, Focht & Fitzgerald for Respondents.

McCABE, J. pro tem.*—Since 1922 plaintiffs have been the owners of certain land in the Point Loma area of the city of San Diego. Their land holdings in this area were increased in 1945 to a total holding of approximately 13 acres. For longer than the history in the record recites there was a draw or swale which crosses diagonally over the property. From 1922 plaintiffs' evidence indicates there was no running water in the draw except in 1927 and 1935, when there was a heavy rainfall. During these two rainfalls there was a small amount of water which ran through the property and which water caused no damage. One of the plaintiffs testified that even on these two occasions it took three or four days of heavy rain to cause the small run-off then in the draw.

About 1950, defendant subdividers presented subdivision plans to defendant city of San Diego which included a system of drainage, storm drains and highways. These plans pertained to property in the immediate vicinity of plaintiffs' property. These plans being approved by the defendant city, the planned improvements were constructed, approved and accepted by the defendant city and became a part of the defendant city's system of public works. This system of drains was so constructed that the rain water collected therein was conducted through a culvert under Catalina Boulevard and into the draw or swale on plaintiffs' property. In addition, the waters in the immediate vicinity on Catalina Boulevard are directed along the draw by an opening in the berm. At the other end of the draw is a culvert through which the water may leave plaintiffs' property. Most of the installed drainage system received the original and natural drainage area or

---

*Assigned by Chairman of Judicial Council.

basin, but there was included within the installed drainage system lands which were not a part of the natural area or basin.

Shortly after the completion of the drainage system there was a flow of water in the draw after a rain. This flow started within a short time after a rain started. In 1927 and 1935 the flow through the draw was a few feet in width and a few inches in depth. After the drainage system was installed the flow was as much as 100 feet in width and several feet in depth. After the drainage system was installed and over a period of years it became apparent there was a serious erosion problem on plaintiffs' land, which was created by the water channeled onto the land by the drainage system. In places, the erosion has reached a depth of four or five feet. There is testimony that over the course of time the eroding at the upper end will reach a depth of 20 feet before it reaches the hydraulic grade.

When plaintiffs rested their case motions for nonsuit were made by all defendants. The trial court granted the motions as to all defendants except defendant city. This ruling was correct. In *Anderson* v. *Fay Improvement Co.*, 134 Cal.App.2d 738, 745 [286 P.2d 513], it is said:

"The law is well settled that the contractors or subdividers could not be held liable for the damage in a direct or inverse condemnation suit. ' "If the contractor follows the plans and specifications furnished by the public agency, and damage results to the adjacent property, the public agency and not the contractor is liable." ' (*Heimann* v. *City of Los Angeles,* 30 Cal.2d 746, 757 [185 P.2d 597], quoting from *Veterans' Welfare Board* v. *City of Oakland,* 74 Cal.App.2d 818, 832 [169 P.2d 1000] ; see also *Marin Mun. W. Dist.* v. *Peninsula Paving Co.,* 34 Cal.App.2d 647 [94 P.2d 404]; *De Baker* v. *Southern Calif R. Co.,* 106 Cal. 257 [39 P. 610, 46 Am.St.Rep. 237]; *Shaw* v. *Crocker,* 42 Cal. 435; *Eachus* v. *City of Los Angeles,* 130 Cal. 492 [62 P. 829, 80 Am.St.Rep. 147]; *Engebretson* v. *Gay,* 158 Cal. 27 [109 P. 879].)"

The defendant city complains of the judgment rendered against it on the grounds (1) the evidence does not support the judgment; (2) if there was a "taking" within the purview of article 1, section 14, California Constitution it is entitled to an easement over plaintiffs' property; (3) the evidence does not support the award of $20,000 damages and an incorrect rule of damages was used.

Defendant city relies upon the cases of *Archer* v. *City of Los Angeles,* 19 Cal.2d 19 [119 P.2d 1] and *San Gabriel V. C.*

*Club* v. *County of Los Angeles*, 182 Cal. 392 [188 P. 554, 9 A.L.R. 1200] in support of its first contention. In each of these cases the court had before it a condition which is described in the opinion as a watercourse or natural watercourse. We therefore must determine whether the draw through the plaintiffs' land properly can be described as a watercourse or is of some other characteristic. ▋ The courts of the state have decided that whether a depression is a watercourse or not is a question of law and not a question of fact. (*Sanguinetti* v. *Pock*, 136 Cal. 466, 470 [69 P. 98, 89 Am.St.Rep. 169].)

In *Los Angeles C. Assn.* v. *City of Los Angeles*, 103 Cal. 461, 464 [37 P. 375], the court said:

"A watercourse is defined to be 'a running stream of water; a natural stream, including rivers, creeks, runs, and rivulets.' (Black's Law Dictionary, title 'Watercourse.')

"There must be a stream usually flowing in a particular direction, though it need not flow continually. It may sometimes be dry. It must flow in a definite channel, having a bed, sides, or banks, and usually discharge itself into some other stream or body of water. It must be something more than a mere surface drainage over the entire face of a tract of land, occasioned by unusual freshets or other extraordinary causes. It does not include the water flowing in the hollows or ravines in land, which is the mere surface water from rain or melting snow, and is discharged through them from a higher to a lower level, but which at other times are destitute of water. Such hollows or ravines are not, in legal contemplation, watercourses. (Angell on Watercourses, 3-7; *Shields* v. *Arndt*, 4 N.J.Eq. 234; *Hoyt* v. *City of Hudson*, 27 Wis. 656 [9 Am.Rep. 473]; *Luther* v. *Winnisimmet Co.*, 9 Cush. 171; Washburn on Easements, 209, 210.)"

▋ The evidence does not bring the draw or swale on plaintiffs' property within this definition of a watercourse. The trial court's determination that in contemplation of law it was not a watercourse is adequately sustained by the evidence in this case.

▋ As to defendant city's second contention, the rule of law and distinctions to be made are clearly set out in *Archer* v. *City of Los Angeles*, *supra*, where it is said:

"In certain circumstances, however, the taking or damaging of private property for such a purpose is not prompted by so great a necessity as to be justified without proper compensation to the owner. (*Pennsylvania Coal Co.* v. *Mahon*, 260 U.S. 393 [43 S.Ct. 158, 67 L.Ed. 322]; *Chicago B. & Q. R. R.*

*Co.* v. *Chicago,* 166 U.S. 226 [17 S.Ct. 581, 41 L.Ed. 979]; see cases cited in 10 Cal.Jur. 283, 284, 295.) The liability of the state under article I, section 14 of the California Constitution arises when the taking or damaging of private property is not so essential to the general welfare as to be sanctioned under the 'police power' (*Pennsylvania Coal Co.* v. *Mahon, supra; Chicago B. & Q. R. R. Co.,* v. *Chicago, supra;* 10 Cal.Jur., *supra;* see *Mugler* v. *Kansas,* 123 U.S. 623 [8 S.Ct. 273, 31 L.Ed. 205]), and the injury is one that would give rise to a cause of action on the part of the owner independently of the constitutional provision. (*Lamb* v. *Reclamation Dist.,* 73 Cal. 125, 129-131 [14 P. 625, 2 Am.St.Rep. 775]; *San Gabriel Valley Country Club* v. *County of Los Angeles,* 182 Cal. 392 [188 P. 554, 9 A.L.R. 1200]; *Jefferson County Drainage Dist.* v. *McFaddin,* (Tex.Civ.App.) 291 S.W. 322.)'' . . .

■ ''If the property owner would have no cause of action were a private person to inflict the damage, he can have no claim for compensation from the state. (*Lamb* v. *Reclamation Dist., supra,* 129-131; *San Gabriel Valley Country Club* v. *County of Los Angeles, supra; Jefferson County Drainage Dist.* v. *McFaddin, supra.*) In the present case, therefore, plaintiffs have no right to compensation under article I, section 14, if the injury is one that a private party would have the right to inflict without incurring liability.''

■ Plaintiffs under the facts of this case would have a cause of action against a private individual and thus, under the rule of law just cited, they would have a cause of action against defendant city. (*LeBrun* v. *Richards,* 210 Cal. 308 [291 P. 825, 72 A.L.R. 336]; *Andrew Jergens Co.* v. *City of Los Angeles,* 103 Cal.App.2d 232 [229 P.2d 475]; *Callens* v. *County of Orange,* 129 Cal.App.2d 255 [276 P.2d 886].) Nevertheless, defendant city claims that under article I, section 14, California Constitution, if they have to pay damages they should be given an easement because there is a ''taking'' of land. We do not think this contention has substance. Prior to 1879 our state Constitution provided in article I, section 8, ''Nor shall private property be taken for public use without just compensation.''

■ However, in 1879 a portion of article I, section 8, was revised and after that date article I, section 14, provided: ''Private property shall not be taken or damaged for public use without just compensation having first been made to . . . the owner . . .''

The case of *Reardon* v. *City & County of San Francisco*, 66 Cal. 492 [6 P. 317, 56 Am.Rep. 109], decided in 1885, is the first appellate case to be decided after the adoption of article I, section 14, and apparently is the leading case on this subject. It has been cited and followed in many cases but has never been overruled. We therefore will apply the rule of the Reardon case to the facts of this one. It is to be noted that the Reardon case was not an eminent domain case but, as here, was an action to recover damages to property resulting from installations put in by a public body. In construing the provisions of this constitutional provision the court said, at page 501:

"To what kind of damage does this word 'damaged' refer? We think it refers to something more than a direct or immediate damage to private property, such as its invasion or spoliation. There is no reason why this word should be construed in any other than its ordinary and popular sense. It embraces more than the taking. If it did not refer to more than the damage above mentioned, the word 'damaged' in the clause relied on would be superfluous. It seems to us that the direct invasions spoken of would come within the clause as it stood in the constitution of 1849. If the word 'damaged' only embraced physical invasions of property, the right secured by this word would add nothing to the guaranty as it formerly stood. In the case above cited from 99 U.S., the court said, referring to a clause in the constitution of Illinois similar to that in the constitution of this state in force since 1879, that 'this is an extension of the common provision for the protection of private property.'"

Also, on page 505, the court said:

"We cannot think that the convention inserting in the constitution of this state the word 'damaged' in the connection in which it is found, and the people in ratifying the work of the convention, intended to limit the effect of this word to cases where the party injured already had a remedy to recover compensation. They engaged in no such empty and vain work. It was intended to give a remedy, as well where one existed before as where it did not; to superadd to the guaranty found in the former constitution of this state, and in nearly all of the other states, a guaranty against damage where none previously existed."

The Reardon case and others citing it, determined that a cause of action exists in a property owner for damages independent from a "taking."

■ The trial court was correct in awarding damages without granting an easement. By its pleadings defendant city did not seek an easement. We are not now deciding whether defendant city might seek and obtain an easement in a separate proceeding, but we do decide that under the pleadings and the applicable law the trial court did not commit error in awarding damages without adjudging an easement in favor of defendant city.

We have determined that this action does not involve a "taking" of property as though under eminent domain proceedings but it is one for damages to property. ■ The trial judge, as the measure of damages, used the difference in the reasonable market value of the property before and after the injury. Neither party quarrels with this rule of damages but, in effect, defendant city says there was no evidence on which the court could apply this rule and there was no difference in the reasonable market value because the evidence reflects the reasonable market value was greater than it had been before the drainage installations. Defendant city does not contend the installations enhanced the market value but does insist that since there was evidence that the value of the property was greater in later years the court had no right to award damages. Defendant city's position would require a court to hold that where there is a general economic inflationary period causing an increased price, and damage is sustained during that period of time, there can be no dollar recovery. We do not believe this position is sound. ■ In the instant case there is substantial evidence that the land without the damage was worth $131,800 and with the damage, $83,500. Further, there was evidence that the property in the area had appreciated in value. Apparently there is no one factor to which this may be attributed. It is common knowledge that land in California, and particularly Southern California, has had a heavy appreciation in market price and value during the time period here in question. Obviously, plaintiffs' land was no exception. There was evidence that about 1949 the reasonable market value of plaintiffs' land was $34,600 and at the time of trial and without the damage it had a reasonable market value of $131,800. Under the evidence in this case the court was justified in making an award of $20,000, and such an award is sustained by substantial evidence. Therefore, we will not reverse it on this appeal.

■ Defendant city complains of a ruling of the court allowing evidence to be admitted as to the cost of the installa-

tion of a drainage pipe through the plaintiffs' land which would channel and conduct the water and make some portions of the land usable. It was testified the cost would be $50,000. Defendant city says the trial court used this testimony to arrive at its award. The measure of damages is not the cost of the installation of a pipe to carry the water through plaintiffs' land; however it properly may be considered by the trial court for evidence of the decrease in market value. (See *Podesta* v. *Linden Irr. Dist.*, 141 Cal.App.2d 38 [296 P.2d 401].) The ruling of the trial court in admitting this testimony was not erroneous.

Judgment affirmed.

Griffin, P. J., and Mussell, J., concurred.

A petition for a rehearing was denied September 11, 1958.